## McClure v. McClintock, et al.

(Decided October 29, 1912.)

### Appeal from Bourbon Circuit Court.

1. Damages—Action for Damages for Procuring Cancellation of Bond-Letter—Competency of.—Where one makes false statements in order to procure the cancellation of a bond, and the cancellation actually follows by reason thereof, he is liable in damages, although he acted without malice, but if he acted with malicious motives, the jury has the right in an action against him for damages to increase the damages on account thereof. A letter which the defendant wrote to the bonding company, which it is alleged, influenced the action of the company in the cancellation of the bond, was important as evidence on the trial.

2. Evidence—Commission to Take Depositions of Witnesses Outside of the State—Common Law Rule.—The common law rule providing for the taking of depositions of witnesses who reside out of the jurisdiction by commission has not been abrogated by statute and it was error for the trial court to refuse to issue a commission to a Maryland officer directing him to take the depositions of the witnesses residing in that State who were named in the original notice and who failed to appear. Appellee did not give notice to take upon interrogatories, and the only way to obtain the depositions was by commission, and the court had the inherent power to issue it.

3. Evidence—Production of Letter—Presumption—Submission to Jury.—There was sufficient evidence to show it was within the power of appellee to obey the subpoena duces tecum by producing the letter that it is alleged resulted in the cancellation of appellant's bond, and as he failed the presumption is that it contained false statements to the detriment of appellant and caused the cancellation of the bonds, and the case as to

appellee should have been submitted to the jury under proper instructions.

TALBOTT & WHITLEY, E. M. DICKSON for appellant.

E. P. HUMPHREY, FIELD McLEOD and DENIS DUNDON for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee, James D. McClintock, and appellant, James McClure, resided in Paris, Bourbon County, Kentucky, for many years next prior to the alleged cause of this litigation. McClintock conducted a fire insurance business in that city and also represented as agent, his co-appellee, The American Bonding Company. McClure was cashier of The First National Bank of that city and also trustee of Sarah Lewis Whitehead and guardian of Frankie Thompson. He executed bond for the faithful performance of his duties, etc., in all three of these positions and the American Bonding Company signed them as surety. On December 5, 1908, the bonding company took steps to be released on each of these bonds and was released shortly thereafter. This act of the bonding company caused considerable trouble and annoyance, and the bank directors, not knowing the cause for the act of the bonding company or whether it would be safe to continue McClure as its cashier, they, and also appellant, wrote the company and asked for its reasons for declining to remain surety for McClure. The bonding company declined to give its reasons, but stated that it did not desire to remain upon McClure's bond and secured its release in accordance to its rights reserved in the contract at the time the bonds were executed.

Appellant brought this action against James D. McClintock, Thomas W. Satterwhite, Tracy Underhill, who were partners representing the American Bonding Company, and the American Bonding Company of Baltimore, Maryland. He alleged in his petition, among other things, the following:

"That said defendant, James D. McClintock, moved by ill will and malice towards plaintiff, and said Thomas P. Satterwhite, Tracy Underhill and the American Bonding Company of Baltimore, did subsequent to July 1, 1908, maliciously, wrongfully and unlawfully con-

spire, combine, confederate and agree together and
among themselves to injure plaintiff in his occupation,
employment, standing and business, and especially in
his trust and fiduciary relations herein above set out,
and to ruin, oppress, impoverish, annoy, humiliate and
harrass plaintiff, and to drive him out of the business
in which he was engaged, and to deprive or to cause
him to be deprived of his position as cashier, and of his
position as trustee and of guardian as aforesaid, by
canceling, or causing to be canceled without just cause
or excuse the said cashier bond, and by withholding
from the plaintiff and from the directors of said bank,
and the patrons thereof and the persons interested
therein, the alleged cause for the cancellation of said
bond; and by withdrawing from liability on said
fiduciary bonds, and withholding from the persons in-
terested in said estate the alleged cause thereof.''

He also alleged that James McClintock had been for
many years and was at that time engaged in the fire in-
surance business in the city of Paris; that he had been
for some time and was at that time the local agent for
his co-appellee, The American Bonding Company; that
shortly before the acts complained of, he, appellant,
and Roy Clendenin, a brother-in-law of McClintock,
entered into a partnership and conducted a fire insur-
ance business in Paris; that his entering into this busi-
ness caused McClintock, who was moved by ill will and
malice towards him and who desired to injure him, to
make the statements complained of and to make false
statements to his co-appellee, The American Bonding
Company, through Thomas Satterwhite and Underhill, its
State agents, which resulted in the bonding company
asking for and obtaining a release from the bonds
when it had already been paid in full for signing the
bonds.

It seems from the evidence that the bonding com-
pany sought to be released from the bond on account of
information it had received from McClintock through
its State agents, Satterwhite and Underhill. It had a
right, under the contract, to be released with or with-
out cause. Appellant endeavored to show that McClin-
tock stated, in substance, in the letter he wrote to the
bonding company or to its State agents, that McClure
was traveling a good deal and neglecting his business;
that he was spending money too fast and that he was

likely to become insane. McClintock denied making such statements, and claimed that he only said that McClure's father became insane and was sent to the asylum in Lexington. He stated that he wrote no falsehood whatever; and that it was not his purpose to have the bonding company obtain a release from the bonds, but to have them to refuse to renew the bonds when they ran out. The testimony showed that McClintock was embittered towards McClure; that McClintock at one time had an office in the bank and the United States inspector complained of his holding his office there and he was caused to move, and he claims that McClure caused the action of the inspector in this matter, and it appears that he was further embittered because McClure set up in the fire insurance business in opposition to him. It matters not, however, how angry he was with appellant, if he told the truth in the letter to the bonding company, he is not liable, but if he told falsehoods to accomplish his purpose, he is liable. If McClintock made false statements in order to accomplish a result and the result did actually follow by reason thereof, he was liable in damages, although he acted without malice, but if he acted with malicious motives the jury had a right to increase the damages on account thereof, therefore, the letter which he wrote to the bonding company was important as evidence on the trial of this case.

Soon after the filing of the action, appellant gave notice to take the deposition of Underhill and Satterwhite in Louisville, by way of cross-examination. They stated that they received the letter referred to and had it but refused to produce it. They were asked many questions as to the contents of the letter and asked if it contained the matters heretofore spoken of, but they declined to answer all questions with reference to the contents of the letter. The matter was referred to the court for opinion as to whether they should produce the letter and answer the questions. The court's ruling on this matter was favorable to appellant. The judge, however, was sick or at least absent at the next term of the court, and it appears that in the meantime McClintock went to the city of Louisville and obtained this letter and four or five others which he had written Satterwhite and Underhill, therefore they could not answer the questions or produce the letter as required by the court. Just before McClintock obtained the letters, Underhill

severed his connection with the firm of Satterwhite & Underhill. When McClure learned that McClintock had secured the letter, he asked for a rule against Satterwhite to show cause why he should not be punished for contempt, but the court declined to issue it. It is unnecessary to pass upon the question as to whether or not the court erred in this respect, as it will not likely occur again. But Satterwhite evidently committed a wrong in surrendering this letter to McClintock when he knew the matter was pending before the court as to whether he should produce it or whether he should answer questions with reference to its contents. He had no right to place it out of his power to comply with the order of the court.

The next question for our consideration is an effort upon the part of McClure to obtain the testimony of certain officials of the bonding company in Baltimore, Maryland. He gave notice to take the depositions, and McClintock appeared on that day by counsel, but the witnesses named did not appear and the matter was continued until the next day upon which they again failed to appear and the officer refused to issue an attachment for them or to in any manner compel their attendance. The officer's reason for not doing this was that he had no right to do so without a commission from the court authorizing him to take the depositions. An attorney of Baltimore, who represented appellant, also stated that under the law of that State, the commissioner had no right to issue compulsory processes for witnesses without a commission having been issued authorizing him to take the depositions. Appellant then moved the court to issue a commission to this officer in Maryland directing him to take the depositions of the persons named in the original notice. This the court refused to do, and we think erred in so refusing. It is true, as claimed by appellee's counsel, there is no authority in the statute or code requiring commissions to be issued authorizing depositions to be taken in a foreign State, except section 571 of the Civil Code, which is as follows:

"If more than three days notice to take a deposition be required by section 567, the party to whom the notice is given may, by notice to the adverse party or his attorney, served on the day when the first notice is given, or on the following day, require the deposition to be taken upon interrogatories." This section leaves the

matter with the party upon whom notice was served. If he desires them taken upon interrogatories he may give notice within the time specified in the section. Appellees did not take advantage of this section, therefore, appellant could not take the depositions upon interrogatories. In our opinion, the court had the inherent power in the due administration of justice to issue the commission to some officer to take the depositions. This appears to have been the only way to obtain the depositions, and, certainly, the court had a right to obtain this testimony in some way. At common law the ordinary mode of obtaining deposition was by commission. In 13 Cyc., page 882, it is said:

"At common law the ordinary mode of procuring depositions is by commission, and this mode of procedure is usually required by statute, especially where the witness is beyond the jurisdiction. It follows that except where the common law rule had been abrogated, or special circumstances exist which require dispatch, if the issue of a commission is prerequisite to the right to take testimony by deposition, testimony cannot be so taken without a commission."

This rule has not been abrogated by our statute; it only requires the clerk to issue commissions when the depositions are to be taken upon interrogatories. The common law rule still prevails in this State. In Greenleaf on Evidence, section 320, it is said:

"If the witness *resides abroad*, out of the jurisdiction, and refuses to attend, or is *sick and unable to attend*, his testimony can be obtained only by taking his *deposition* before a magistrate, or before a commissioner duly authorized by an order of the court where the case is pending; * * * The writ or commission is usually accompanied by interrogatories, filed by the parties on each side, to which the answers of the witnesses are desired. * * * The court of chancery has always freely exercised this power, by a commission either directed to foreign magistrates, by their official designation, or more usually, to individuals by name; which latter course, the peculiar nature of its jurisdiction and proceedings, enables it to induce the parties to adopt, by consent, where any doubt exists as to its inherent authority."

As before stated, Satterwhite testified that he gave the letter spoken of and others to McClintick after the

attempt to take his deposition. McClintock testified that he did not receive the original but took a copy of it which he kept for a while and destroyed and then later secured another copy which was purloined from his desk shortly before the trial. According to appellant's testimony there is hardly a scintilla of evidence that it contained the matters he claimed and there was no testimony whatever showing a conspiracy or combination of appellees to injure him. In view of the testimony, the lower court properly sustained a motion for a peremptory instruction in so far as the bonding company and Satterwhite & Underhill were concerned, but as to McClintock we have arrived at a different conclusion. There is no doubt from the testimony that McClintock used all the power he had in preventing this letter from being introduced upon the trial. Subpoena duces tecum calling for this letter was issued and served, and as said in Greenleaf on Evidence, Vol. 1, section 37:

"The presumption of innocence may be overthrown, and a *presumption of guilt* raised, by the misconduct of the party in suppressing or *destroying evidence,* which he ought to produce, or to which the other party is entitled. * * * A similar presumption is raised against a party, who has obtained possession of papers from a witness, after the service of a *subpoena duces tecum* upon the latter for their production, or which is withheld. The general rule is *omnia praesumuntur contra spoilatorum.* His conduct is attributed to his supposed knowledge that the truth would have operated against him."

There was sufficient evidence to convince this court that it was within the power of McClintock to obey the subpoena duces tecum and produce the letter upon the trial and as he failed the presumption is that it contained false and damaging statements to the detriment of appellant and these statements caused the bonding company to obtain its release from the bonds, and the case as to McClintock should have been submitted to the jury under proper instructions.

For these reasons, the judgment of the lower court is reversed and cause remanded for further proceedings consistent herewith.

Judge Winn not sitting.