## McClintock v. McClure.

(Decided October 26, 1916.)

### Appeal from Bourbon Circuit Court.

1. Appeal and Error—Law of Case.—An opinion of this court upon a former appeal is the law of the case only in so far as the issues and evidence upon a subsequent trial are the same.

2. Conspiracy—Trial—Libel and Slander.—In an action charging a conspiracy by several to injure business, a libel by one of the alleged conspirators having been set up as part of the alleged conspiracy, should proceed to trial against the defendant charged with its utterance, although no conspiracy is proven and the case is dismissed as to his co-defendants.

3. Libel and Slander—Instructions.—All issues except those growing out of the alleged libel having been eliminated by the failure of the evidence to prove a conspiracy, the instructions should relate to the issues upon libel alone.

4. Libel and Slander—Publication—Malice.—A letter, which falsely expresses a doubt of the sanity of the person about whom it is written is libelous per se, from the publication of which malice will be presumed, ordinarily, but when the letter and the pleading setting it up show it was written by an agent to his principal about a matter within the scope of the agency, and that the letter is therefore a qualifiedly privileged communication, malice will not be presumed in the publication, but must be proved.

5. Libel and Slander—Whether the letter here falsely expresses a doubt of plaintiff's sanity is a mixed question of law and fact to be submitted to the jury.

6. Libel and Slander—Malice.—The malice ordinarily presumed from a libelous publication is the same that must be proved when the publication is a qualified privilege, and the character and effect of the libelous publication are the same whether privileged or not, the only difference being in the proof necessary to sustain the charge.

7. Libel and Slander—Evidence.—Under a plea of the truth of the statements in the letter, either party could introduce evidence of the truth or falsity of any of those statements.

8. Libel and Slander—Evidence—Burden.—The burden of proving malice in the publication of a qualifiedly privileged communication being upon plaintiff an instruction that defines the plaintiff's right of recovery and assumes the existence of malice is prejudicially erroneous.

9. Trial—Damages—Instructions.—It was prejudicial error to refuse to give an instruction upon the question of mitigation of damages warranted by the proof, the appellant having offered an instruction upon that question.

SAMUEL M. WILSON and DENNIS DUNDON for appellant.

ROBERT HARDING, TALBOTT & WHITLEY and E. M. DICKSON for appellee.

OPINION OF TH&#39;: COURT BY JUDGE CLARKE—Reversing.

This action was filed in the Bourbon circuit court on March 30, 1909, by appellee, James McClure, against appellant, James D. McClintock, Thomas Satterwhite, Tracey Underhill and the American Bonding Company of Baltimore to recover damages for injury to appellee and his business and business standing alleged to have been sustained as the result of a conspiracy upon the part of the four defendants.

At a trial at the June, 1911, term of that court a peremptory instruction was given on behalf of all the defendants, and from the resultant judgment, dismissing the petition, an appeal was taken to this court, which is reported in McClure v. McClintock, et al., 150 Ky. 265 and 773; and a reversal ordered.

When the case went back for a new trial appellee filed an amended petition setting up a letter written by appellant McClintock, as local agent of the defendant bonding company, to Satterwhite and Underhill, the state agents of said bonding company, which letter, in certain statements and as a whole, was alleged to have been false and to have been written by McClintock in bad faith and maliciously and as a part of the conspiracy of the four defendants to injure him in his business and his business standing.

As a defense to this amended petition the appellant McClintock filed a separate answer in four paragraphs, the first of which denied that any statement in the letter or that the letter, as a whole, was false or written in bad faith or maliciously; the second paragraph alleged and relied upon the truth of all the statements in the letter; the third paragraph alleged that the letter was written by defendant as agent in the ordinary course of business to his principal in good faith upon reasonable information, and was a privileged communication; while the fourth paragraph alleged that the statement in the letter, that the appellee's mother was insane, was believed in good faith upon reasonable grounds, and that fact was relied upon in mitigation of damages.

That the letter was written as a result of any conspiracy was denied by the four defendants. The letter set up in the amended petition referred to above is as follows:

"Paris, Ky., November 26th, 1908.
"Messrs. Satterwhite & Underhill,
          Louisville, Ky.

"Gentlemen:—On my return home to-day I find your letter of the 23rd saying you had renewed the bond of James McClure, Guardian for Frankie Thompson. My judgment is we had just as well drop this bond. Also Mr. McClure's bond as Cashier of the First National Bank of Paris, Kentucky. Mr. McClure's mother lost her mind; also a sister. And while Mr. McClure at present seems to be alright, he has done some things in the last year that I do not think looks exactly right. I would like to hear from you on this subject, as I want some one else to assume the responsibility, not me. With best wishes, my judgment is when we are safe is a good time to drop out.

                    Yours truly,
                    "J. D. McCLINTOCK, Agt."

The particular statements that he alleged to be false, malicious and injurious are these:

"1. Mr. McClure's mother lost her mind;

"2. While Mr. McClure, at present, seems to be alright, he has done some things in the last year that I do not think looks exactly right;

"3. My judgment is when we are safe is a good time to drop out;

"4. My judgment is we had just as well drop this bond, also Mr. McClure's bond as Cashier of the First National Bank of Paris, Kentucky."

The other facts necessary to an understanding of the case are fully set out in the former opinion, 150 Ky. 265, and need not be restated here.

The affirmative allegations of appellant's amended answers having been traversed, a second trial of the case was had in June, 1914, which resulted in a verdict and judgment for appellee against appellant McClintock in the sum of $10,000.00, and a dismissal of the petition against the other defendants as a result of a peremptory instruction.

To reverse the judgment against him, appellant McClintock is appealing here, no appeal having been prosecuted by the appellee, McClure, from the judgment dismissing his petition against the other defendants. The grounds relied upon by appellant McClintock for reversal are as follows: (1) That the court erred in over-

ruling his motion to fix the burden of proof upon him;
(2) that the court erred in overruling his motion for a
peremptory instruction; (3) that the court erred in the
admission of evidence for appellee upon the question of
his mother's sanity; (4) that the court erred in the
instructions refused and given.

Before proceeding to a discussion of these questions,
it is necessary that we first determine to what extent
the law of the case is determined by the decision on
the former appeal. Upon that appeal appellee's cause
of action consisted solely of the charge of a conspiracy
upon the part of all the defendants to injure him in his
business and business standing, and the only question
presented was whether or not the proof was sufficient
to carry the case to the jury. This court, in its opinion,
held that the charge of conspiracy against the defend-
ants, other than McClintock, was not supported by suffi-
cient evidence to warrant a submission of the case to
the jury, and that the peremptory instruction in their
behalf was properly given; but as to McClintock, that
in view of his evident suppression of the letter which
the evidence showed he had written about the appellee,
and which resulted in a cancellation of his bonds upon
which the bonding company was surety, furnished suffi-
cient evidence for the presumption that the letter, if
produced, would have sustained the charge against
him, and by a response to the petition for a rehearing
the other three defendants were required to again stand
trial because of their assistance to McClintock in the
suppression of the letter. What was said in the former
opinion had reference only to the record then before the
court, and is in no sense binding upon this appeal, ex-
cept in so far as the issues and proof, as the record now
stands, are the same as upon the former appeal.

While the new pleading filed after the case had been
remanded did not abandon the cause of action for a con-
spiracy to injure appellee's business, it presented a new
element of the conspiracy charge that will support a
cause of action against the appellant McClintock alone,
even if no conspiracy was presented. Upon this new
issue the former opinion is, of course, of no binding
effect whatever, and upon the question of what instruc-
tions should have been given to the jury upon the issue
presented by the amended pleading, the former opinion
does not relate in any way. The former opinion in
awarding appellee a new trial upon the conspiracy

charge against all of the defendants is rested solely upon a presumption of liability that would be proven by the suppressed letter. Upon the second trial the letter was produced, but, with the letter in, there was a total failure to prove any conspiracy upon the part of any of the defendants; however, appellee's cause of action did not rest alone upon the conspiracy charge, but an independent cause of action against McClintock was presented that was not dependent upon proof of a conspiracy. As the proof failed to show any conspiracy, a peremptory instruction was properly given in favor of defendants, other than McClintock, to which McClintock also would have been entitled, except for the independent cause of action against him, presented by amended petition, and alleged, but not proven, to have been uttered as a part of the conspiracy. It is apparent, therefore, that the former opinion of this court has no application whatever to the independent cause of action against appellant McClintock, which was not in the record upon the former appeal, and that upon the second trial the conspiracy charge having been eliminated by the evidence, there was no issue upon which to instruct the jury, except this new issue, and the instructions to the jury should have been confined to the new issue alone as though no former appeal had been taken and without regard to the opinion upon that appeal. L. & N. R. Co. v. Stewart's Admrx., 163 Ky. 823, and Miller v. Metropolitan Life Insurance Co., 89 S. W. 183.

2. As to where the burden of proof rested, had to be determined by the trial court, upon the pleadings, and before the introduction of any evidence. As the pleadings stated appellee's cause of action, it consisted of a conspiracy to injure his business, and the fact that by amendment appellee charged appellant McClintock with a separate and distinct tort done by him as a part of that conspiracy, did not change the cause of action originally presented, but simply added a new element to that charge. As the burden of proof was upon the appellee to prove the conspiracy, the court did not err in placing the burden upon him.

3. We come now to consider what, if any, cause of action remained to appellee at the conclusion of his evidence, in which he had failed to prove any conspiracy. That every other question had been eliminated by the evidence except such as were presented in the amended pleadings filed after the case went back for a second

trial, is in effect confessed by appellee, because he offered no instruction upon any other question, and we need not therefore review the testimony to show that no other issue was involved; and, in order to determine what issues should have been submitted by the instructions to the jury, we need only to examine the letter and the pleadings and evidence in reference thereto. We are clear that this letter as a whole, and in its statements specifically set out in the amended petition, charges not only that certain of appellee's relatives had been insane, and by necessary inference or implication imputes to appellee a hereditary predisposition to insanity, which counsel for appellant assume is all it charges; but it goes much farther and presents a mixed question of law and fact of whether it contains the implication that appellee has done things that indicated to the appellant a manifestation upon the part of appellee of impending insanity. We entertain no doubt that such a charge, if untrue, is defamatory and libelous *per se,* from which ordinarily malice would be inferred; that the charge was not made directly, but obliquely and by inference, makes the charge none the less defamatory and insidious. 25 Cyc. 259. We, therefore, conclude that this action had developed, when ready for submission to the jury, into one for libel purely and simply, and while this charge had been presented originally as a component part of a charge of conspiracy, the appellee was entitled nevertheless to have that matter finally determined by the jury in this case. In the third edition of Cooley on Torts, page 213, the rule is thus stated:

"Though a conspiracy be charged yet if upon the trial the evidence convicts but one person with the wrong actually committed, the plaintiff may recover against him as if he had been sued alone.".

In 8 Cyc. 647, we find the following:

"An averment that the acts were done in pursuance of a conspiracy does not change the nature of the action or add anything to its legal force and effect. If a plaintiff fail in the proof of a conspiracy or concerted design, he may yet recover damages against such of the defendants as are shown to be guilty of the tort without such agreement. The charge of conspiracy where unsupported by evidence will be considered mere surplusage not necessary to be proved to support the action.

"This being so the question arises for what purpose is the allegation and proof of conspiracy important? The answer is that when the mischief contemplated is accomplished the conspiracy becomes important as it may affect the means and measure of redress. It may be pleaded and proved as aggravating the wrong which plaintiff complains of and to enable him to recover against all the defendants as joint tort-feasors. The party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it."

Numerous authorities are cited in support of each of these texts, and it is quite clear that there was no error committed in submitting the case as to appellant McClintock, and the dismissal of the case as to the other defendants, in the absence of proof to support the charge of conspiracy, provided there was sufficient evidence to support the libel charge.

4. The contention of counsel for appellant that the motion for a peremptory instruction in his behalf should have been sustained is based upon the theory that the letter and the statements therein objected to were not libelous *per se*. We have heretofore expressed our opinion that ordinarily the letter would be libelous *per se*, and that malice would be inferred from the publication thereof. Under the particular facts here, however, the publication is relieved from the presumption of malice by the fact conceded in appellee's amended petition, pleaded in the third paragraph of appellant's answer to the amended petition and not contradicted in the evidence, that the relationship of principal and agent existed between appellant and those to whom the letter was written, and the letter was a qualifiedly privileged communication, and therefore proof that it was written and published with malice, was incumbent upon appellee before appellant could be held liable therefor. The fact that the publication was made in a qualifiedly privileged communication simply relieves the publication from the presumption of malice otherwise attendant, and puts upon the appellee the burden of proving malice, but it does not change the actionable quality of the words published, nor is there any difference in the malice in the one case presumed but in the other to be proven, although much confusion has arisen from an effort to make two different kinds or degrees of malice out of what will be presumed and what must

be proven, which is merely an evidential distinction and nothing more. Courier Journal Co. v. Sallee, 104 Ky. 343; Tanner v. Stevenson, 138 Ky. 589; Townsend on Slander, Section 87. There was ample proof of the falsity of at least some of the statements in the letter and of malice upon the part of appellant in its publication, to warrant a submission of the case to the jury, and the court did not err in overruling appellant's motion for a directed verdict.

5. A great many witnesses were examined by both parties upon the question of the truth or falsity of the allegation in the letter that appellee's mother had been insane, and appellant urges most earnestly that proof of her sanity introduced by appellee over appellant's objection was erroneous and most prejudicial; that the proof introduced by appellant upon that question was competent for the purpose of showing that he made the statement upon reasonable information sufficient to excuse him for making the statement, and that whether she was in fact insane was immaterial. In this position, however, we are unable to concur. The fact of whether the statement of her insanity was true or false was put directly in issue by the defense that the statements of the letter were true, and evidence on both sides of that question was clearly admissible upon that issue alone. The fact, if a fact, that appellant acted reasonably and upon sufficient information in making the statement that she was insane, rendered the testimony of such a fact available to him for the additional purpose of showing that he acted in good faith under his privileged communication defense, but did not deprive appellee of the right to introduce proof of her sanity upon the primary issue of whether the statement was true or false.

6. Counsel for appellant complain of the first, second and fourth instructions given, and the objections urged to the first and second instructions are well taken The first instruction attempts to define appellee's right of recovery, while the second fixes the measure of damages. Appellee's right of recovery is not predicated upon proof of malice, but the existence of malice is presumed which under the pleadings and facts of this case was erroneous as we have heretofore pointed out; and was, in our judgment, prejudicial. Nor is this error corrected by instruction No. four given, as under that instruction the burden is upon appellant of proving the

absence of malice. The measure of damages in the second instruction is based upon mental suffering from the cancellation of appellee's bonds, rather than from the publication of the letter as it should have been, although this was probably not prejudicial to appellant as the cancellation of the bonds resulted from the publication of the letter.

The court also refused to submit to the jury the question of mitigation of damages warranted by the proof, and this was prejudicial error as the appellant offered an instruction upon that question.

Having concluded that because of these errors in the instructions refused and given another trial will be necessary, we are of the opinion that it will be more profitable to indicate what instructions should be given upon another trial, rather than to discuss the other objections urged to the instructions given and refused. Unless upon another trial a change should be rendered necessary by new pleadings or evidence, instructions substantially as follows, in addition to an instruction defining malice and one permitting a verdict by nine or more of the jury, should be given, to-wit:

Instruction No. 1. If the jury believe from the evidence that in the letter dated November 26, 1908, written by the defendant to Satterwhite and Underhill, the statements "Mr. McClure's mother lost her mind"; "While Mr. McClure at present seems to be alright, he has done several things in the last year that I do not think look exactly right"; "My judgment is when we are safe is a good time to drop out," and "My judgment is we had just as well drop this bond and also Mr. McClure's bond as Cashier of the First National Bank of Paris, Kentucky," or any of them, were false, or that by said statements, or any of them, defendant meant to express and did express a doubt as to plaintiff's mental condition for the purpose of creating a false impression upon the minds of said Satterwhite and Underhill, and in order to bring about a cancellation of plaintiff's bonds in which the American Bonding Company was surety, and, if the jury further believe from the evidence that in writing said letter and imparting to said persons by said letter the information therein contained, the defendant, James D. McClintock, was prompted by malice toward the plaintiff, James McClure, the jury should find for the plaintiff, and unless the jury so believe, they should find for the defendant.

Instruction No. 2. If the jury believe from the evidence that, at the time he wrote the letter and imparted its contents, as set forth in the first instruction, the defendant had received from sources which he believed to be reliable the information contained in said letter, and if they believe from the evidence that, at the time said letter was written and its contents imparted, as aforesaid, defendant in good faith believed that the information contained in said letter was true, and if the jury further believe from the evidence that, in writing said letter and imparting to Satterwhite and Underhill the information therein contained, the defendant in good faith and without malice so acted in the exercise of his right and duty to communicate to said persons, as State Agents of the American Bonding Company, any facts or information affecting its interest as surety in plaintiff's bonds, and to protect said company, the jury should find for the defendant.

Instruction No. 3. If the jury believe from the evidence that the statements and implication, if any, in said letter, mentioned in instruction No. 1, were true in words or in substance, at the time the same were written, the jury should find for the defendant.

If, however, the jury believe from the evidence that all of the aforesaid statements and implications are not proved to be true but that some part of them are so proved, in words or in substance, the jury should award nothing for those that are proved to be true, if they find for the plaintiff.

Instruction No. 4. If the jury find for the plaintiff, they should award him such sum as compensatory damages as they may believe from the evidence will fairly and reasonably compensate him for the injury, if any, that the jury may believe from the evidence resulted to the plaintiff's occupation or business described in the proof, and to his reputation and character by reason of the writing, in the letter mentioned in the first instruction, of the statements therein contained, and the consequent cancellation of plaintiff's bonds, and for the humiliation or mental distress suffered by plaintiff, if any, by reason of the aforesaid statements in said letter; and if the jury find for the plaintiff, they may, or may not, in their discretion, award the plaintiff by way of punitive damages, in addition to compensatory damages, as above defined, such further sum as under all

the evidence they deem proper, not exceeding, however, in all, $50,000.00, the amount claimed in the petition.

The above instructions are substantially the same as were approved by this court in Tanner v. Stevenson, *supra,* with but slight changes to suit the facts here, and are not materially different from those offered by appellant except in one particular.

It will be noticed that punitive damages are permissible under the above instructions, and counsel for appellant insist this is not proper in this case upon the ground that proof of actual malice is necessary before compensatory damages can be recovered, and that to permit both compensatory and punitive damages upon the same proof allows double damages for the same thing. This argument is based upon the erroneous assumption that there is a difference in malice ordinarily presumed in a libelous publication, and in the malice that must be proven where the publication is a qualified privilege, but as we have heretofore shown no such difference in reality exists. In all actions for libel the gist of the action is malice, and whenever malice is shown in the commission of a tort, it is the rule in this state to permit a recovery of punitive in addition to compensatory damages. Upon an analogous state of facts punitive damages were allowed in the case of Tanner v. Stevenson, *supra,* and approved by this court. No new element is added to, nor is anything taken away from the cause of action for libel where the publication is qualifiedly privileged. It is only upon the question of proof required to sustain the cause of action that there is any difference, and this cannot effect the character of the cause of action or the recovery allowed when the cause of action is established by the proof required. Reid v. Sun Pub. Co., 158 Ky. 732; Pennsylvania Iron Works Co. v. Henry Vogt Machine Co., 139 Ky. 497; Nicholson v. Merritt, 109 Ky. 369.

Complaint is also made that the verdict is excessive, but in view of the fact that another trial must be had, we have not considered that question.

For the reasons indicated the judgment is reversed and the case remanded for proceedings not inconsistent herewith.