## Decker v. Kentucky Coke Company.

(Decided November 6, 1925.)

### Appeal from Ohio Circuit Court.

1. Libel and Slander—Libelous Publication Must be Read in its Ordinary Meaning as Commonly Understood.—A publication which is claimed to be libelous must be read in its ordinary meaning as commonly understood.

2. Libel and Slander—Innuendo Cannot Extend Meaning of Words Claimed to be Libelous Beyond their Natural Import.—Innuendo cannot extend meaning of words claimed to be libelous beyond their natural import, and it can only serve to explain some matter already expressed.

3. Libel and Slander—Published Letter Charging Employees with Breaking up Company's Organization Held Not Actionable per se.—Published letter, charging certain employees with being agitators who by their agitation were breaking up morale of company's organization and forcing superintendent to abandon his position, held not actionable as being libelous per se.

4. Libel and Slander—Letter Calling Attention to Fact that Banding Together for Intimidation is Illegal Held Not Actionable per se as Being Libelous.—Published letter of employer, calling attention to fact that banding together for purpose of intimidation is illegal, held not to charge any of its employees named therein as

having so done, and hence was not actionable per se as being libelous.

HEAVRIN & MARTIN and WILKINS & SPARKS for appellant.

MATT O'DOHERTY, GLOVER H. CARY and. CLARENCE BART-LETT for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming. .

The appellant in the winter of 1922-1923 was an employee of the appellee in its coal mines at Echols, Kentucky. As he frankly admits in his testimony, he and certain other members of the miners' union, of which he was a member, were very much dissatisfied with their mine superintendent, W. E. Hicks, and during this time they were doing everything in their power through their union to have him removed as such superintendent. About this time there was also some disorder about the mines. One of the mine employees was shot at by an unknown person; another employee received through the mail a threatening letter signed K. K. K.; still another employee had to draw a revolver in order to protect himself in an altercation; and, further, the coal tipple of the mine mysteriously burned.

There had been several meetings of the labor union at which appellant and other members, among whom were the seven men in addition to appellant mentioned in appellee's letter to be presently noted, had been quite active in formulating charges, complaints and resolutions directed against Hicks and at which appellant and others had been appointed on committees to visit appellee and present the complaints of the union, which duty these men later performed. After investigation, appellee declined to remove Hicks. Later there had been a public hearing before the duly constituted authorities of the district organization of the miners' union at which the charges preferred by the local labor union through the instigation of appellant and others against Hicks had been aired and which hearing resulted in the exoneration of Hicks. Appellant and his colleagues were not satisfied with the result of this hearing or the action of appellee in refusing to discharge Hicks, and they continued their agitation for his removal. In this setting, the appellee on February 23, 1923, posted in front of the gen-

eral store at Echols, Kentucky, two copies of the following letter:

"Echols, Ky., Feb. 23, 1923.

"To All Employes:

"The managment has been forced to the conclusion that the following men are not working with the company in a spirit of harmony and that they have done and will continue to do everything in their power to drive Mr. Hicks and one or two others from Echols.

"The management further believes that the large majority of the men at Echols are satisfied with conditions as they are and that the dissatisfaction is confined to these men only.

"The company has endeavored to give steady employment to the men at Echols and in order to do that it necessarily can not carry a large number of extra men but must depend on the steadiness and loyalty of these it does employ. It considers attempts to disrupt the organization as disloyalty.

"The management is entirely satisfied with Mr. Hicks, and does not intend to have him hampered by any group, actively unfriendly to him.

"The offer made by Mr. McDonald in his letter to your committee is therefore renewed in a modified form and for any of the following men, or for men who are dissatisfied and who will seek work elsewhere, the company will pay the cost of moving to any point not closer than Central City, not further than 100 miles from Echols. This offer will be open until March the 20th, 1923, at which time the management will take such steps as may be necessary to restore peace and harmony to the organization at Echols.

"The list referred to which follows is of course subject to correction:

| | |
|---|---|
| J. Baker Dortch | Estil Fulkerson |
| Charlie Myers | Harry Woodburn |
| James Griffith | Dick Thornsberry |
| James Decker | Daulphin Hunter |

"In view of recent occurrences the management further begs to call attention to the fact that any banding together or assembling for the purpose of

intimidation is illegal, as also are threats of personal or physical violence, and all illegal acts will be dealt with by summary discharge of the offenders and by institution of such criminal proceedings as are provided by law.

"KENTUCKY COKE COMPANY,
By A. W. Lee, Manager Mining Department"

The appellant and the other seven men mentioned in this letter each brought a suit against the appellee alleging that the above letter was libelous and actionable *per se,* in that it charged them with the felony of confederating and banding together for the purpose of intimidating and driving Hicks out of the community. The demurrer of the appellee to the petition being overruled, it answered in three paragraphs, the first being a traverse of some immaterial matters in the petition; the second being a plea of the truth; and the third pleading a lot of extraneous matters which had very little to do with the subject matter of the action. On the trial, the court, after overruling appellee's motion for a peremptory instruction, instructed the jury to find for the appellant unless it believed from the evidence that the statements made in the letter were true. The jury found a verdict for the appellee, and from the judgment entered on that verdict this appeal is prosecuted.

Numerous grounds are relied on for reversal, none of which we need discuss, as we think the court should have sustained the demurrer of the appellee to appellant's petition, since the letter which was published was not libelous or actionable *per se.* A publication which is claimed to be libelous must be read in its ordinary meaning as commonly understood. York v. Mims, 179 Ky. 525, 200 S. W. 918; Plummer v. Commercial Pub. Co., 208 Ky. 210, 270 S. W. 793; 25 Cyc. 355. In McGowan v. Manifee, 7 T. B. Mon. 314, we said:

"Words are to be taken, neither in the milder nor in the more grevious sense, but in that sense in which they would be understood by those who heard them; the judge ought not to torture them into a charge of guilt, nor explain them into innocence, contrary to their obvious import."

It is also well settled that an innuendo cannot extend the meaning of words beyond their natural import;

it can only serve to explain some matter already expressed. Spears v. McCoy, 155 Ky. 1, 159 S. W. 610. Plummer v. Commercial Tribune Pub. Co., *supra.*

Testing the letter herein complained of in the light of these principles, we find that it is divided into two clearly defined divisions. The first division charges the eight men therein named with the failure to work in harmony with the company's organization and with the effort to drive their mine superintendent from the mines. There is no charge in this division of an illegal banding together on the part of these men or of the commission of any illegal act. At the worst, this part of the letter simply charges these men with being agitators who, by their agitation, were breaking up the morale of the company's organization and were forcing Hicks to abandon his position as mine superintendent. But such a charge is not actionable *per se.* In Chicago R. I. & P. R. Co. v. Medley, 155 Pac. 211 (Okla.), L. R. A. 1916D, 587, the question was whether or not the following service card issued to a discharged employee by the railroad was actionable *per se*:

"To Whom it May Concern: This is to certify that Mr. N. H. Medley has been employed at Enid, Oklahoma, on the Chicago, Rock Island & Pacific Railway, as car repairer, from July 25, 1909, to January 17, 1910, when he was discharged for being an agitator and creating trouble in the ranks of our men at Enid. Services unsatisfactory on this account. C. M. Taylor, (L.) Supt. Motive Power."

In holding that the above publication was not actionable *per se,* the Oklahoma court said:

"We have had many agitators in the history of this country—not only labor agitators, but others. In fact most of the modern legislation, both for the protection of laboring man and the improvement and betterment of society, has been due largely to agitators. The potential force of labor unions and labor organizations is due to a great extent to labor agitators. We think it would be going too far to hold that the language used in this letter is libelous *per se.*

"We have searched in vain for precedents, and the nearest one we find is that of the case of Wabash Ry. Co. v. Young, 162 Ind. 102, 69 N. E. 1003, 4 L. R. A. (N. S. 1091), wherein it was held:

" 'It is not libelous *per se* to accuse one of being a member of a labor union and a labor agitator.' "

In the case of Tennessee Coal, Iron & R. R. Co. v. Kelly, 163 Ala. 348, 50 So. 1008, the court held that it was not a libel *per se* to charge the plaintiff with having made trouble at the defendant's mines or with having run negroes out of their homes, such conduct not necessarily being a crime.

In the case before us, these men had a right, if they wished, to be dissatisfied with their working conditions and their superintendent, and to agitate for a change. It was no felony or crime to do this, and the management did not charge them with any criminal act in stating that this was what they were doing. Hence it is clear that the first division of the letter in question is not actionable *per se.*

The last division of its letter in which the appellee calls attention to the fact that banding together for the purpose of intimidation is illegal, cannot by any stretch of imagination be said to charge any of the named eight men with having so done. There is a clear break in the letter at this point. It plainly reads that the management *further* begs to call attention to certain matters, thus indicating that appellee had closed with that part of the letter dealing with the eight men named and was now taking up another matter to which it wished to call the attention of its employees. By no fair implication can it be said that this part of the letter refers to the eight men earlier mentioned.

Therefore the case of McClintock v. McClure, 171 Ky. 714, 188 S. W. 867, relied on by appellant and where the rule is laid down that a charge though not made directly but obliquely and by inference is none the less a charge, is not applicable, for there is no charge by inference or even obliquely here that the eight men whose names are set out in the letter had banded illegally together or so proposed to do.

Taken as a whole, then, the letter of which appellant complains is not actionable *per se,* and the trial court should have sustained appellee's demurrer to appellant's petition. Although the lower court did not do this, yet the jury found a verdict for the appellee which arrives at the same result as would have been arrived at had the court taken the action we have stated as proper.

The judgment is therefore affirmed.