## Wyman v. News Democrat Publishing Company.

(Decided October 2, 1928.)

Appeal from Graves Circuit Court.

1. Libel and Slander.—Newspaper article, stating that 48 persons testified in election contest who did not vote in election, although they were counted by election officers as having voted, not connecting plaintiff as election officer, in libel suit based thereon, with any wrongdoing in case, and in fact not showing that there was wrongdoing by any officer, held not libelous.

2. Libel and Slander.—Newspaper article concerning election in which plaintiff, alleging it libelous, acted as election officer, not affecting him in his professional capacity as an attorney, was not actionable as imputations affecting him in his vocation.

W. J. WEBB and AUBREY HESTER for appellant.

BRADSHAW & MACDONALD and ROBBINS & SMITH for appellee.

Opinion of the Court by Commissioner Hobson— Affirming.

Appellant brought this suit against the appellee, alleging in his petition these facts: He is a regular licensed practicing attorney, a citizen residing at Mayfield, Ky., and has always enjoyed a good reputation; he was one of the election officers in ward 1, precinct 2, at Mayfield, in the primary election held August 7, 1926; thereafter a contest was filed in the Graves circuit court by Garth K. Ferguson against W. V. Gregory contesting the nomination of Gregory for representative in Congress in that district. While the case was being tried in court, the defendant printed in its newspaper, which was widely circulated in Graves county, the following false, malicious, and untrue statements:

"Attorneys for Senator Ferguson yesterday afternoon read the depositions of forty-eight witnesses, who did not vote in the election, but who were counted by the election officers as having voted."

He alleged that by these statements the defendants meant to and did, charge him with the crime of fraudulently counting more votes as having voted than were cast, and so accused him of a crime under the criminal laws of Kentucky. The circuit court sustained the defendant's demurrer to the petition. He then filed an amended petition, in which he alleged that the above statement was made with reference to the contest of the election in ward 1, precinct 2, of which he was one of the election officers, and that the depositions that had been read upon the case were with reference to the election in that precinct. The court sustained the defendant's demurrer to the petition as amended. He then amended his petition again, and alleged that previous to the publication of the words above quoted, the defendant had been carrying through the columns of its paper news items to the effect that the illegal voting in Mayfield had been in ward 1, precinct 2, in which he was an election officer, and by the previous articles this precinct was the one specifically mentioned, and it was understood by the reading public that the officers in this precinct were those to which the articles in question referred and to whom the defendant intended to refer. The circuit court sustained the demurrer to the petition as amended. The plaintiff appeals.

The plaintiff filed with his second amended petition the whole article as it was published in the newspaper, and the article as a whole simply gave an account of what took place in the courtroom that day. The words sued on do not impute any crime or wrongdoing to the officers in any precinct. They merely show that 48 persons testified that they did not vote in the election, although they were counted by the election officers as having voted. There is nothing in the article to show what precinct these voters lived in, or to connect this in any way with the precinct in which appellant served. The fact that there had been previous articles referring to this precinct is not material, unless there was enough in this article to connect it with the previous articles. But waiving all this, it often happens in a hot election that people vote under assumed names, and the election officers are not responsible for this. There was nothing connecting the plaintiff with any wrongdoing in this case, and in fact nothing to show that there was wrongdoing by any officer; for the fact may have been, after all, that although these witnesses testified they had not voted, the return of the officers was not false. An election officer commits no crime unless he knowingly and willfully certifies to what is untrue. There is nothing here imputing any conduct to the plaintiff bringing him into ridicule, for all the facts stated may be true and yet he be entirely blameless. The fact that he was an attorney at law is immaterial, for his acts as an election officer were independent of his position as an attorney. The rule is well settled that—

> "Statements which do not affect the person in question in his professional capacity are obviously not actionable as imputations affecting him in his vocation." 17 R. C. L. 308.

Truthful publications of what actually occurs in the courts are to be encouraged rather than discouraged and such publications will not be adjudged libelous when the words used do not fairly and naturally impute a crime or impute such misconduct as would subject the party to contempt or ridicule.

> "A publication which is claimed to the libelous must be read in its ordinary meaning as commonly understood. . . . .

"It is also well settled that an innuendo cannot extend the meaning of words 'beyond their natural import; it can only serve to explain some matter already expressed." Decker v. Kentucky Coke Co., 211 Ky. 66, 276 S. W. 1092, and cases cited.

Judgment affirmed.