## Equitable Life Assur. Soc. of the United States v. Witten

(Decided Oct. 6, 1936.)

W. M. BULLITT and EUGENE B. COCHRAN for appellant.

Z. WELLS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is from a judgment for $1,020.80, payable in monthly installments of $51.04, recovered by Denzil Witten on a group insurance policy.

Witten went to work for the Inland Steel Company, whose employees were insured by the appellant against

total and permanent disability, in July, 1930. He operated a motor, carrying supplies in and out of the mine. On the night of August 5, 1930, according to Witten's testimony, he fell and struck his kneecap, twisted his left leg, and fell on it with his full weight. He was made sick for about 20 minutes and suffered much pain with his leg, which swelled considerably before the end of his shift. He was assisted to the office, where he reported the injury, and then to his boarding house by his brother. In the late afternoon he visited Dr. Bailey, the company's physician, at the hospital and received some liniment from him with directions to apply it to the swollen leg. He also went to see the doctor the next day. His condition prevented his going to work the next two nights. On the third day he returned to his job, but his condition was such that his companions did all of the heavy lifting and most of his work for him. He continued on the job until discharged on August 20th for a violation of the safety rules on that day. Since then Witten has been unable to do the work required to operate a motor or anything else about a mine. His leg is stiff and crooked, requiring the use of crutches. He has continuously suffered much pain. The plaintiff's brother and boarding house keeper corroborated him as to his injury and condition.

But his foreman testified that no complaint of the injury was made to him at the time, although he had heard that Witten had hurt his knee while bailing water. He had worked regularly and was paid for every day until his discharge. Dr. Bailey contradicted Witten and testified that he had never called upon him in connection with the injury. Upon cross-examination it was developed that in 1927 Witten's left foot was run over by a "pony truck" while working for the previous owner of the mine. An effort was made to prove that his present condition is due to that injury, but the plaintiff insisted that it had never given him any trouble other than some temporary soreness. His work, he said, was not interrupted or interfered with on that account. To sustain him, numerous witnesses testified that Witten was not lame before the accident of August 5, 1930. On the other hand, there were perhaps as many witnesses who testified that long before the occasion involved Witten had been just as lame as he was afterwards. About a year after he hurt his leg, Witten was

examined by Doctors Daniel, Cassell, and Pickelseimer. They described the condition of his knee as ankylosis and an injured cartilage. They expressed the opinion that it could have been caused as claimed by Witten, and also that he was then rendered and has continued to be totally and permanently disabled. About the same time he was examined by Doctors Bailey, Osborne, and Caseboldt for or on behalf of the steel company or the insurance company. Their testimony is to the effect that Witten was and is about 50 per cent. disabled and could do no heavy lifting.

We do not regard the verdict as flagrantly against the evidence.

A previous judgment in favor of the appellee in this case was reversed because of improper argument of his counsel. Equitable Life Assurance Society v. Witten, 256 Ky. 766, 77 S. W. (2d) 53. On the day the case was set for retrial, two years after the first trial, the defendant plead that Witten could not recover because he did not file "due proof" of his disability "before the expiration of one year from the date of its commencement," which is a condition of the contract of insurance. See Equitable Life Assurance Society v. Elkins, 261 Ky. 591, 88 S. W. (2d) 37. The response was a denial and a plea of waiver.

It was not until September 23, 1932, that a formal claim, accompanied by proofs of disability, was received by the Assurance Society. But Mr. John Ward, a lawyer-farmer who had been employed by Witten, testified that in the latter part of 1930, or early part of 1931, he wrote to the home office of the Equitable Assurance Society, notifying it of Witten's injury and his claim. He received a reply on the society's stationery that it would make an investigation. Later he received another letter from the society disclaiming liability. This correspondence had been lost by him. Cross-examination resulted in some little confusion in the mind of the witness about these responses by the company, it appearing that he had also taken up the matter with the employer. His best belief, however, was that it was the insurance company which had written the disclaimer. There was presented to the witness by the defendant's counsel a copy of a letter addressed to him from a chief clerk of the steel company regarding Witten's claim. This was for

the purpose of refreshing the witness' memory and an effort to show that it was the steel company which had denied liability. That letter states: "We are in receipt of copy of letter dated May 30th from the Equitable Life Assurance Company of the United States, relative to the above settled claim." It then advised the attorney that Witten "doesn't have any claim at all" because his condition "does not show he is permanently and totally disabled." An indorsement shows that a copy of the letter was made for the Equitable Life Assurance Society. Ward testified that this was received in reply to a letter which he had written that insurance company. After its receipt, he got another letter from the society.

The defendant introduced no evidence whatsoever upon the point, relying wholly upon what it regarded as the weakness of the plaintiff's evidence of notice and waiver. Where proper evidence is within the control of a party whose interest it would naturally be to produce it, and he fails to do so, there is a logical inference that the evidence would be unfavorable to him. McClure v. McClintock, 150 Ky. 265, 150 S. W. 332, 42 L. R. A. (N. S.) 388; 10 R. C. L. 884; Stocker v. Boston & M. R. R., 84 N. H. 377, 151 A. 457, 70 A. L. R. 1326; Wigmore, sec. 291. The suppression of its record justified the jury in resolving adversely to the defendant whatever doubt may have been raised by any indefiniteness in Mr. Ward's testimony when it came to consider the evidence and the instruction on the point of notice which was given by the court as offered by the defendant.

It is the settled law in this state that denial of liability waives formal proof of the conditions upon which that liability rests. Horn's Adm'r v. Prudential Insurance Co. of America, 252 Ky. 137, 65 S. W. (2d) 1017; Independent Life Insurance Co. of America v. Downey, 255 Ky. 95, 72 S. W. (2d) 1008. We may repeat in this connection what was said in Ætna Life Insurance Co. v. Bethel, 140 Ky. 609, 131 S. W. 523, 527:

"Insurance companies should not be permitted to trifle with, or mislead, or attempt to mislead, their patrons by acts or conduct indicating that proofs of loss need not be furnished. If they do, they will not be permitted to defeat a recovery upon the ground that proofs were not furnished. If the company wishes proofs of loss, it should not do any-

thing that would cause a person of ordinary prudence and intelligence to conclude that it does not want them. We do not mean to hold that the mere failure of the company to call for proofs of loss will in itself be a waiver of the right to demand them or authority to the insured to bring an action without furnishing the proofs. But we do mean that, when the company has notice that a claim will be made, slight acts upon its part indicating that it denies liability will amount to a waiver.''

At this trial, the defendant pleaded also that the individual certificate issued to the plaintiff was not the contract of insurance and that he could not maintain his action on it. It also moved to require the plaintiff to elect whether he would prosecute the suit on the group policy or on the individual certificate relied on in his petition. These pleadings were, admittedly, to avoid a waiver of a failure to base an action on the group policy. See Equitable Life Assurance Society v. Smith, 260 Ky. 56, 83 S. W. (2d) 885.

The company also denied the plaintiff's affirmative pleading as to the terms of the group policy. It now argues that he failed to prove any contract of insurance. The plaintiff called one of the defendant's counsel as a witness and procured from him a copy of a form of policy said to be like the group policy which had been, by stipulation, filed and read to the jury on the previous trial. During the course of the trial that paper was obtained from the record in this court, and it was proven that the form which had previously been submitted to the jury was an exact copy. The appellant argues this was hearsay evidence and with its omission there was a failure to prove any contract of insurance. There is no merit in the point.

The judgment is affirmed.