## CHARLES FENSKY, Appellant, v. MARYLAND CASUALTY COMPANY.

### Division One, March 2, 1915.

1. **SLANDER: By Agent: Liability of Corporation.** A corporation is liable for a slander uttered by its agent while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question, though the slander was not uttered with the knowledge of the corporation or with its approval and though it did not ratify the act of the agent. A corporation is liable to the same extent as a natural principal for the malicious wrongs of its officers or agents, if committed in the course of a transaction which is within the scope of their authority.

2. ————: **Office of Innuendo.** The office of an innuendo in a petition for slander is not to enlarge the words actually used, but to state in what sense or meaning the words were used. If they are not actionable *per se*, the pleader must state by way of colloquium such extrinsic facts as will show their slanderous meaning.

3. ————: ————: **Stating Cause of Action.** A petition showing that plaintiff, as an attorney, had been employed by one May by a written contract to prosecute a claim for damages against an Ice Company on account of personal injuries sustained by him while in its employ; that said contract was signed by May, and that by reason thereof plaintiff had a property right in said cause of action to the extent of his statutory attorney's lien; that the defendant Insurance Company was vitally interested in said action, because it had indemnified said

Ice Company against claims for damages; that defendant had knowledge of plaintiff's contract with May; that the "agent of defendant, while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question," in the presence of plaintiff and May and another of defendant's agents falsely said: "The contract you (meaning plaintiff) claim to have with this man (meaning May) was not signed by him and he (meaning May) is here to tell you so. Furthermore, the day on which this contract is alleged to have been signed, I saw May and his hand was so badly hurt and bandaged that he could not have signed his name if he wanted to;" that said agent then and there charged and imputed and intended to charge and impute to plaintiff that "he had in his possession and was asserting a right under a forged instrument," states such extrinsic facts as to show the words were used in an actionable sense. The words used are not actionable *per se*, but the incidental facts pleaded, if they do not charge plaintiff with having forged May's name to the contract, at least show that plaintiff was claiming valuable rights under a contract knowing it to have been forged, and in either case the language used was actionable.

4. ———: ———: **Liability of Corporation: Grade of Agent.** The law makes no distinction between the classes of agents of a corporation, whether high or low. It is not the law that only an officer or manager can make the corporation liable for slander. If the agent "while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question" uttered the slanderous words, the corporation is liable. And the facts in this case clearly show that the agent was so acting. [Disapproving the seeming restriction in Payton v. Clothing Co., 136 Mo. App. 577.]

Appeal from St. Louis City Circuit Court.—*Hon. C. C. Allen,* Judge.

REVERSED AND REMANDED.

*Charles Fensky pro se; Henry E. Haas* of counsel.

(1) To accuse one with the commission of a felony, either directly or by innuendo, constitutes actionable slander. Sec. 4817, R. S. 1909; 18 Am. & Eng. Ency. Law, 868; 25 Cyc. 271; Webb's Pollock on Torts, p. 289. (2) Under the statutes of Missouri it is a felony for a person to have in his possession any

forged instrument of writing, knowing the same to be forged, by which he may endeavor to cheat, injure or defraud another, or to collect money on account of the same. Secs. 4651, 4654, 4666, R. S. 1909; 25 Cyc. 292; 18 Am. & Eng. Ency. Law, 882. (3) To charge and accuse an attorney at law with corrupt, dishonest or improper practice, in the conduct of his profession, tending to prejudice him in his calling or to impeach his integrity as an attorney, constitutes actionable slander. 18 Am. & Eng. Ency. Law, 960; 25 Cyc. 333; Webb's Pollock on Torts, p. 289; Johnson v. St. Louis Dispatch Co., 2 Mo. App. 565; 22 Am. & Eng. Ann. Cases, 375; Montgomery v. Printing Co., 229 Pa. St. 165; Garr v. Selden, 6 Barb. 416. (4) A corporation is liable for a slander uttered by its agent while acting within the scope of his employment and in the actual performance of his duties thereof touching the matter in question, though the slander was not uttered with the knowledge of the corporation or with its approval and though it did not ratify the act of the agent. Thompson on Corporations (2 Ed.), sec. 5441; 1 Clark & Marshall on Corporations, pp. 627, 629; 17 Am. & Eng. Annotated Cases, 620; Hypes v. Railroad, 82 S. C. 315; Rivers v. Railroad, 90 Miss. 196; Payton v. Clothing Co., 136 Mo. App. 577; Minter v. Bradstreet Co., 174 Mo. 444; Johnson v. Dispatch Co., 2 Mo. App. 565; Johnson v. Dispatch Co., 65 Mo. 539; Boogher v. Life Assn., 75 Mo. 324; State ex inf. v. Ins. Co., 152 Mo. 38. (5) And whether the agent of the corporation was acting within the scope of his employment and in the actual performance of his duties, is a question of fact to be submitted to the jury. Payton v. Clothing Co., 136 Mo. App. 577; Thompson on Trials, sec. 1370.

*Holland, Rutledge & Lashly* for respondent.

(1) The utterance referred to in appellant's petition is not slanderous. The words contained

therein being ordinary English words free from ambiguity, they may not be enlarged upon or added to by the allegations contained in the innuendo. Cook v. Pub. Co., 241 Mo. 326; Walsh v. Pub. Co., 250 Mo. 141; Powell v. Crawford, 107 Mo. 595; Winsor v. Ottofy, 140 Mo. App. 563; Church v. Bridgman, 6 Mo. 190; Naulty v. Bulletin Co., 206 Pa. St. 128; Townshend on Slander and Libel (4 Ed.), par. 336; Newell on Slander and Libel (2 Ed.), p. 619. (2) Even if it be assumed that the utterance in question contained all the charges mentioned in the innuendo, that is, even if it were actually slanderous, the respondent corporation would not be liable therefor. Under some authorities a corporation is never liable for slander; under others it may be liable, but only where it is shown that an official or manager of the corporation made the utterance. Townshend on Slander and Libel (4 Ed.), par. 265; Payton v. Clothing Co., 136 Mo. App. 577. In this case there is no charge that the utterance in question was made by an official or manager of the corporation.

GRAVES, P. J.—This is an action for slander. In the trial court the plaintiff was cast upon a general demurrer, charging that his petition failed to state facts sufficient to constitute a cause of action. That is the sole question here. The petition reads:

"Plaintiff states that he is and was at all times herein mentioned a regularly licensed attorney at law and has been practicing his profession in the city of St. Louis, Missouri, for the past fifteen years:

"That the defendant, Maryland Casualty Company, is a foreign corporation doing business in the State of Missouri and is engaged, among other things, in carrying employers' liability insurance.

"Plaintiff further states that on the 8th day of May, 1911, he was employed by one Eugene May, colored, to prosecute his claim for damages against the Polar Wave Ice & Fuel Company, a corporation, doing

business in the city of St. Louis, on account of personal injuries sustained by the said Eugene May while in the employ of said Polar Wave Ice & Fuel Company on or about the 29th day of April, 1911, at its plant at or near Cook and Channing avenues in said city of St. Louis; that plaintiff's contract of employment was in writing duly signed by the said Eugene May and that by reason thereof plaintiff had a property right in said cause of action to the extent of his statutory lien; which said contract is herewith filed and marked 'Exhibit A.'

"Plaintiff further states that the said defendant, Maryland Casualty Company, was assurer for said Polar Wave Ice & Fuel Company and had contracted and agreed to hold the said Polar Wave Ice & Fuel Company harmless from any and all liability by reason of damage suits, and was by reason of said contract of assurance vitally interested in the outcome of the claim of said Eugene May.

"Plaintiff further states that he duly notified the Polar Wave Ice & Fuel Company of his employment in writing by said Eugene May and of his statutory lien on the cause of action, and that the said Polar Wave Ice & Fuel Company in turn notified the said Maryland Casualty Company.

"Plaintiff further states that on or about the 19th day of May, 1911, two agents of the defendant corporation, whose names, to the best knowledge and belief of plaintiff, are Fred Kraemer and — Hulbert, having in their company the said Eugene May, called on plaintiff at his office in the Times Building in the city of St. Louis, Missouri, and said Fred Kraemer, agent of defendant, while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question, in the presence and hearing of this plaintiff and of divers other persons, falsely, wantonly, and maliciously spoke of and concerning the

plaintiff the following false, malicious, and defamatory words, to-wit: 'The contract you (meaning plaintiff) claim to have with this man (meaning May) was not signed by him and he (meaning May) is here to tell you so. Furthermore, the day on which this contract is alleged to have been signed, I saw May and his hand was so badly hurt and bandaged that he could not have signed his name if he wanted to,' then and there intending to charge and impute, and then and there charging and imputing, to plaintiff that he had in his possession and was asserting a right under a forged instrument, knowing the same to be forged, which said charge, if true, constitutes a felony under the laws of the State of Missouri and would subject plaintiff to degrading punishment.

"Plaintiff further states that at the time of uttering said false, malicious, and defamatory words as aforesaid, and with a view of intensifying said slander, the said Fred Kraemer, agent of said defendant, while acting within the scope of his employment and in the actual performance of the duties assigned to him by this defendant procured the said Eugene May, under promise of pecuniary reward, to then and there deny his signature in the presence and hearing of plaintiff and divers other persons; that the false and slanderous language so spoken of and concerning the plaintiff, together with the denial of said Eugene May, so procured as aforesaid, was understood and believed by the persons in whose presence and hearing the same was uttered to mean that plaintiff had in his possession and was asserting a right under a forged contract, and that he, the plaintiff, then and there knew the same to be forged.

"Plaintiff further says that the false and slanderous words so spoken of and concerning the plaintiff by defendant's said agent while acting in the scope of his employment, greatly humiliated plaintiff and has greatly prejudiced him in his good name, fame

and reputation and has greatly injured him in his profession and business as an attorney at law, to his damage in the sum of fifty thousand dollars, in actual damages in the sum of twenty-five thousand dollars and in exemplary or punitive damages in the sum of twenty-five thousand dollars.

"Wherefore, the premises considered, plaintiff prays judgment against defendant for twenty-five thousand dollars actual damages and for twenty-five thousand dollars punitive damages and for his costs in this behalf sustained."

I.   The demurrer being a general one we are not advised upon what theory the trial court held this petition bad.   In the brief of appellant it is said that the trial court took the view that there was no agency in slander, and a corporation was not liable for the slanderous statements of its agent.   We admit that a rule thus broad is announced by Townshend on Slander and Libel (4 Ed.), sec. 265, whereat it is said:

Slander: By Agent of Corporation.

"As a corporation can act only by or through its officers or agents (sec. 261) and as there can be no agency to slander (sec. 57), it follows that a corporation cannot be guilty of slander; it has not the capacity for committing that wrong.   If an officer or an agent of a corporation is guilty of slander, he is personally liable, and no liability results to the corporation."

This rule has long since been exploded, and rightfully so.   The more recent and better rule is well worded in 5 Thompson on Corporations (2 Ed.), sec. 5441, whereat it is said:

"The general rule makes the corporation liable for a slander uttered by its agent while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question, though the slander was not uttered with

the knowledge of the corporation or with its approval and though it did not ratify the act of the agent.''

To like effect is 1 Clark and Marshall on Private Corporations, page 627:

''It has been said that a corporation cannot be liable for a slander or oral defamation by its officers or agents, as 'there can be no agency to slander;' and the opinion has also been expressed that a corporation, because of its impersonal nature, cannot commit torts involving the element of malice, since, to support an action for such a tort, 'it must be shown that the defendant was actuated by a motive in his mind, and a corporation has no mind.' This reasoning, however, is unsound. A corporation, it is true, has no mind, and cannot itself entertain malice, but its officers and agents may, and their mental attitude, including their malice, may, like their consent to a cortract or their physical acts, be imputed to the corporation. It is well settled, therefore, for this reason, that a corporation may, to the same extent as a natural principal, be liable for the malicious wrongs of its officers or agents, if committed in the course of a transaction which is within the scope of their authority.''

And on page 628 the same authority says: ''Thus, it has been held that a corporation may, to the same extent as an individual, be liable in an action for libel, or, it seems, for slander, or in an action for malicious criminal prosecution or malicious false arrest or imprisonment, for malicious prosecution of a civil action, attachment, or other proceeding, for malicious interference with the business of another, for making a false return to a writ, as a writ of mandamus, for example, and for conspiracy, all of which offenses involve a mental element.''

Further in a note on page 629, the same authority adds: ''While it is true that a corporation cannot itself speak and therefore cannot itself slander, neither

264Mo11

can a corporation itself make false representations, and yet a corporation may be liable for the false representations of its agent. For the same reason, it may be liable for a slander by its agents.''

In the recent case of Hypes v. Southern Ry. Co., 82 S. C. l. c. 317, Mr. Justice JONES, says:

''It is established that corporations as well as natural persons are liable for the wilful tort of an agent acting within the general scope of his employment, without previous express authority or subsequent ratification. [Rucker v. Smoke, 37 S. C. 377; Williams v. Tolbert, 76 S. C. 217; Schumpert v. Railway, 65 S. C. 332; Gardner v. Railway, 65 S. C. 342; Riser v. Railway, 67 S. C. 419; Dagnall v. Railway, 69 S. C. 115; Fields v. Cotton Mills, 77 S. C. 549, 11 L. R. A. (N. S.) 822.]

''The old doctrine that a corporation, having no mind, cannot be liable for acts of agents involving malice has been completely exploded in modern jurisprudence. While a corporation is nonpersonal in its formal legal entity, it represents natural persons and must necessarily perform its duties through natural persons as agents, hence must spring the correlative responsibility for the acts of its agents within the scope of their employment.

''The liability of a corporation for malicious libel published by its agent in the course of his employment is generally recognized. [Philadelphia, W. & B. R. R. Co. v. Quigley, 62 U. S. 202; Johnson v. St. Louis Dispatch Co., 27 Am. Rep. (Mo.) 293; Bacon v. Michigan, etc. R. R. Co., 54 Am. Rep. (Mich.) 372; Maynard v. Firemen's Fund Ins. Co., 91 Am. Dec. (Cal.) 672; Fogg v. Boston, etc. R. R. Co., 12 Am. St. (Mass.) 583; Missouri Pacific Ry. v. Richmond, 15 Am. St. (Tex.) 794; 10 Cyc. 1215; 18 Am. & Eng. Ency. Law, 1058.]

''We do not regard the distinction between written and unwritten slander to be of sufficient importance

to warrant the application of a different rule. The written slander is not always or necessarily more public than the spoken, and if it may indicate more deliberation and hence warrant more easily the inference of malice, the difference is merely in degree, not in kind."

So too, in the case of Rivers v. Railroad, 90 Miss. l. c. 211, WHITFIELD, C. J., says:

"The doctrine has long been exploded that a corporation is not liable for slander because, as it was ridiculously expressed, there could be 'no agency to slander.' The true doctrine is that set forth in Clark & Marshall on Corporations, vol. 1, pp. 627-629."

The learned jurist then quotes from the text as we have quoted supra.

In our own State this modern rule as to slander is fully recognized. [Payton v. Clothing Co., 136 Mo. App. 577.]

There can be no sound reason for saying that a corporation may be liable for libel (a doctrine long recognized) and yet not liable for slander—unwritten libel or defamation of character. Under the modern rule the corporate shell will not shield the corporation from the ill effects of the slanderous tongue of its agent, if at the time the agent was transacting for the corporation the business of the corporation, and the slander was uttered in the course of such business—and in connection therewith. As an individual I cannot go to another individual to adjust an account with him, and in the course of so doing publicly denounce him as a thief. Nor should a corporation, through its agents, be able to thus denounce a citizen, and escape liability. This phase of the case, i. e., the character of the agent, we discuss later. It is sufficient to say at this juncture that the corporation is not relieved from liability upon the theory that there "is no agency to slander." If this was the theory

*nisi,* and there were no other questions in the case, the judgment cannot be sustained.

II.   The first point in defendant's brief is stated in this language:

Slander: Office of Innuendo.

"The utterance referred to in appellant's petition is not slanderous.  The words contained therein being ordinary English words free from ambiguity they may not be enlarged upon or added to by the allegations contained in the *innuendo.*"

All this may be granted, and yet the action of the trial court is not necessarily right.   It is not the purpose of an *innuendo* in a petition for slander to enlarge the words actually used, but the office of that part of a slander petition is to state in what sense or meaning the language was used.

If the words used are not actionable *per se,* the pleader by way of colloquium must state such extrinsic facts, as will show the slanderous meaning of the words used.   In the early case of Curry v. Collins, 37 Mo. l. c. 328, we said:

"Since the statute (R. S. 1855, p. 1240, sec. 55), there need be no colloquium of extrinsic facts for the purpose of showing the application of the defamatory matter to the plaintiff, more than the words were spoken of and concerning him.   [Stieber v. Wensel, 19 Mo. 513.]   And when the slanderous words are actionable in themselves, it is not necessary to make any prefatory averments as to the circumstances to which they refer; but if the words do not, *per se,* convey the meaning which the plaintiff would assign to them, the petition must contain a statement of the extrinsic matter necessary to show that they are actionable, and what is necessary to be stated must be proved."

We have set out the petition in full, and we may admit that the language alleged to have been spoken by the agent Kraemer, if taken as standing alone does

not charge an indictable offense, and thus would not be actionable *per se*. In such case it devolves upon the pleader by way of colloquium to state such extrinsic facts as will show that the words were used in an actionable sense. Does this petition state such extrinsic facts? We think so. It is rather inartificially drawn, but we believe there are such extrinsic facts pleaded as to show the words to have ben used in an actionable sense. The plaintiff's petition, as to these extrinsic facts, show (1) that plaintiff was asserting rights under a contract purporting to have been signed by May, (2) that this contract evidenced a lien which plaintiff had upon a cause of action which May had against the Ice Company, (3) that May in fact had a claimed cause of action against the Ice Company, (4) that defendant was vitally interested in such claimed cause of action by May, because it had indemnified by insurance the said Ice Company against such claims; (5) that defendant had knowledge of plaintiff's said contract; (6) that these agents of defendant in the course of their business for the defendant called upon plaintiff with reference to the claim of May and this contract of plaintiff with May; (7) that whilst looking after the alleged liability of defendant upon the very claim, and the claim of plaintiff under the contract with May, the language mentioned was used. The foregoing is a fair statement of the facts pleaded, or clearly inferable, in plaintiff's petition. The question then is, do these incidental facts show the language to have been used in an actionable sense? We think so. It is clear that if they do not show that they charge plaintiff with having forged May's name to the contract, they do at least show that plaintiff was claiming valuable rights under a contract, knowing it to have been forged. In either sense the language as thus used was actionable, and the petition would state a good cause of action. So that we say that whilst this petition is quite inartificially drawn, yet the facts pleaded

and the clear inference to be drawn from the pleaded facts, show the words charged to have been spoken were in fact spoken in the sense attributed to them in the *innuendo*. So viewing the petition it states a good cause of action, if Kraemer's relation to the company was such that the company would be liable for his slanderous remarks. That question we take next.

III. The next contention of the defendant is that the petition only charges that Kraemer was the agent of defendant, and that the defendant is not liable for the slanderous language of a mere agent, and for that reason the petition is bad. The contention of the defendant seems to be that only an officer or manager of a corporation can make the corporation liable for slander. There is language in Payton v. Clothing Co., 136 Mo. App. 577, which lends support to this view. The doctrine is unsound.

**Slander: By Agent of Corporation.**

The petition in this case charges that Kraemer was the agent of the corporation, it charges that what he said and did was said and done "while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question." The extrinsic facts, by way of colloquium, and the reasonable inference from those facts, show that this allegation of being in the line of duty is true. The facts show that this agent was looking after this claim against the defendant, and it of necessity required the agent to investigate the contract of plaintiff which gave plaintiff an interest in the claim. Whatever was done and said was done and said in the very performance of the agent's duty to his master. In effect, when this agent approached plaintiff, the plaintiff not only asserted that there was a valid claim against the agent's principal, but further that by reason of the contract, he, plaintiff, had a half interest in that claim. To this the agent in effect said, yes, you claim under that con-

tract, but that contract is a forgery and you know it, and we have the man right here with us to prove that it is a forgery. If ever words of slander were uttered by an agent, to use the language of Judge THOMPSON, quoted supra, "while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question," this is one of the cases.

Under our paragraph one we have cited the authorities which hold that the corporation may be liable for the slanderous language of the agent. These authorities do not confine the word agent to an officer or general manager, as defendant would have us do and as the Kansas City Court of Appeals seemingly has done in the Payton case, supra. On the contrary, the vast weight of modern authorities places the liability upon the ground that the language was used by an authorized agent in the line of his employment and in connection with the very thing he was looking after for his corporation. The law draws no distinction between the classes of agents as to whether high or low in authority. The things to be looked to are, (1) was the person an authorized agent of the corporation? and (2) if so, was he acting within the scope of his employment, when he used the slanderous language? and (3) was such language used in the actual performance of his duties, and touching the matter in question? If so, then the corporation is liable, whether such authorized agent be high or low in class (so he was duly authorized and was acting within the scope of his authority), and is liable, to again quote from Judge Thompson, "though the slander was not uttered with the knowledge of the corporation or with its approval, and though it did not ratify the act of the agent."

This doctrine is right in principle. An individual could not have gone to the plaintiff and charged him with knowingly exacting money under a forged contract and escape liability, if such charge was false.

Nor should a corporation which sends out an agent who would do the same thing be permitted to escape liability.

The doctrine of "no agency to slander" and "the corporation can't slander because it can't talk" having been fully exploded, it is liable in slander just the same as for any other tort. It is not liable for any tort which is not committed in the course of the agent's employment.

We think a liberal construction of this petition (which construction we are entitled to give it upon a mere general demurrer) shows that a cause of action was stated and the trial court erred in sustaining the demurrer thereto. The judgment *nisi* is reversed and the cause remanded. All concur.