11 P.(2d) 543

## DILLARD v. SHATTUCK.

### No. 3707.

Supreme Court of New Mexico.
May 12, 1932.

J. M. Dillard, of Carlsbad, for appellant.

Caswell S. Neal, of Carlsbad, for appellee.

SADLER, J.

The appellant, J. M. Dillard, a practicing attorney at Carlsbad, N. M., instituted this action in slander against E. S. Shattuck, a former sheriff of Eddy county, claiming general damages in the sum of $10,000. The complaint discloses that the alleged slanderous statements were made in appellant's office, in the presence of three of his clients, on the occasion of a visit there by appellee to present a bill incurred for costs for service fees in seven certain cases, in six of which appellant appeared as attorney for plaintiff and in one as attorney for defendant.

The complaint alleged a custom and practice on the part of appellee during his term of office (the alleged slanderous statements having been made subsequent thereto) of charging costs to the various attorneys at whose instance they were incurred, depending upon such attorneys to make the collections from their clients, and that such practice had been followed in this particular case.

It seems that on this particular occasion the ex-sheriff, appellee, came to appellant's

office and presented an itemized bill showing total charges in the various cases of $24. Some colloquy took place between the parties as to whether appellant had or had not made payments on the account since appellee's retirement from office, the one asserting that he had, and the other that he had not, all as set out in the complaint.

Finally, these allegations appear, to wit: "Plaintiff then made the following statements: 'I have certainly made payments on that account and I have certainly made payments on it since you went out of office.' Then and in the presence and hearing of Wilson Gossett, Homer S. Skeen and J. F. Thompson, citizens of Eddy County, State of New Mexico, and clients of plaintiff, defendant maliciously made the following false, malicious, scandalous, defamatory and slanderous charge to and against plaintiff, to-wit: 'If you say you have ever made any payments on this account (meaning the account of $24.00 for serving said process in list of suit) you are a liar; these parties (meaning the parties to said list of suits whom plaintiff herein represented) all told me (meaning defendant) that they paid you (meaning plaintiff) this money (meaning the amounts due defendant for serving said process in said list of suits) to pay me', and defendant thereby willfully, maliciously and unlawfully charged plaintiff with the commission of the crime of embezzement under the laws of the State of New Mexico, which crime carries with it punishment as follows: imprisonment in the county jail for a period of not less than thirty days nor more than ninety days or by a fine of not less than $10.00 nor more than $100.00 or by both such fine and imprisonment, and further thereby accused plaintiff of an offense for the commission of which plaintiff could be disbarred from the practice of law in the State of New Mexico."

The complaint then avers that said charge is "utterly false, malicious and slanderous," and "did and does cause the public to believe that plaintiff had been guilty of having committed the crime of embezzling the money of plaintiff's clients which had been intrusted to plaintiff by them to pay service fees with in their lawsuits, and that plaintiff had thereby been guilty of dishonest conduct and improper practices and that plaintiff was dishonest and disreputable and not worthy of the confidence of plaintiff's clients and prospective clients, and to cause the public to shun plaintiff with their legal business by reason thereof, by reason whereof plaintiff has been damaged in the sum of Ten Thousand Dollars."

The appellee interposed a demurrer to said complaint. In substance it questioned the sufficiency of the complaint to state a cause of action in that (1) it was based upon oral declarations, not actionable per se; (2) that the language charged to have been used by appellee did not and could not reasonably be interpreted as charging appellant with the crime of embezzlement as alleged in the complaint; and (3) that, the words used not being actionable per se, the complaint was fatal-

ly defective in failing to allege or claim special damages.

The court, after argument of said demurrer, sustained the same. The appellant, plaintiff below, electing to stand upon his complaint, announced that he would decline to plead further. Thereupon the court entered its order dismissing the complaint, from which order this appeal is prosecuted. The correctness of the trial court's order sustaining the demurrer is therefore before us for review.

Both parties are in agreement on the proposition that, unless the words constituting the alleged slander are actionable per se, the complaint is fatally defective by reason of the absence from it of allegations of special damage. That such is the rule seems well established. Wood v. Hannett, 35 N. M. 23, 289 P. 590. Slanderous words deemed actionable are classified in Newell on Slander and Libel (4th Ed.) § 4, p. 6, as follows:

"1. Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.

"2. Words falsely spoken of a person which impute that the party is infected with some contagious disease, where, if the charge is true, would exclude the party from society.

"3. Defamatory words falsely spoken of a person, which impute to the person unfitness to perform the duties of an office or an employment of profit, or the want of integrity in the discharge of the duties of such an office or employment.

"4. Defamatory words falsely spoken of a person which prejudice such person in his profession or trade.

"5. Defamatory words falsely spoken of a person which, though not in themselves actionable, occasion the person special damage."

A reading of appellant's complaint would indicate that he seeks a recovery upon the theory that the words uttered are slanderous per se as charging him with the crime of embezzlement, though in his brief he also argues that they touch him in his office or profession as attorney. The propriety and correctness of the trial court's ruling from either standpoint will be considered.

It may be well, before proceeding further, to advert to some established principles which will control the decision of this case. One we have already mentioned, viz. that, where the words are not slanderous per se, there can be no recovery without both allegation and proof of special or actual damage, as distinguished from the general damage presumed to flow from the publication of language slanderous per se.

In determining whether the words used are slanderous per se, the innuendo is to be disregarded. It can neither add to, nor enlarge, their sense. Hence, if the meaning imputed is not their plain and obvious import, the court, in passing upon a demurrer questioning the per se character of such words, will ignore the innuendo. Newell on Slander and Libel (4th Ed.) §§ 542, 544, and 549.

It also seems established by persuasive authority that the alleged slanderous statements, in order to be actionable per se, must be susceptible of but one meaning, and that an opprobrious and defamatory meaning. 36 C. J. 1150; La Grange Press v. Citizen Pub-Co., 252 Ill. App. 482; Manley v. Harer, 73 Mont. 253, 235 P. 757; Burr v. Winnett Times Pub. Co., 80 Mont. 70, 258 P. 242; Woolston v. Montana Free Press (Mont.) 2 P.(2d) 1020; Phœnix Printing Co. v. Robertson, 80 Okl. 191, 195 P. 487; Ruble v. Kirkwood, 125 Or. 316, 266 P. 252.

The language relied upon to constitute the claimed slander is to be construed as a stranger might look at it without the aid of the knowledge possessed by the parties concerned. Shaffroth v. The Tribune, 61 Mont. 14, 201 P. 271. And it should be given its plain and natural meaning, and be understood by courts and juries as other people hearing or reading the same would ordinarily understand and interpret it. 36 C. J. 1155.

Finally, it should be borne in mind, as an established distinction, that oral defamation is more strictly construed than is libel. 36 C. J. 1157; 17 R. C. L. 266; Jones v. Jones, (1916) 2 A. C. 401, 10 British Ruling Cases, 511, and case note at page 543. The reason for this distinction is obvious. Written slander, by reason of its wider circulation and enduring form, is calculated to inflict greater permanent injury to character, and suggests stronger malice by reason of its studied preparation.

With these controlling principles in mind, we pass to a construction of the language here relied upon, to test its per se character. In order to do so, we strip it of innuendos, and place it in the form of a colloquy between appellant and appellee, taking place in the presence of three of the former's clients, as alleged.

Appellee, walking into appellant's office, handed him a statement, saying:

"Shattuck: Here's a statement of what you owe me in these cases.

"Dillard: Why, I don't owe you that amount. I have made payments on that account. I could not owe you more than $4.50.

"Shattuck: That is what you owe me. You have never paid me anything on this account; you have never paid me anything on this account since I have been out of office.

"Dillard: I have certainly made payments on that account and I have certainly made payments on it since you went out of office.

"Shattuck: If you say you have ever made any payments on this account you are a liar; these parties all told me they had paid you this money to pay me."

Did the appellee in publishing the words, "these parties all told me they had paid you this money to pay me," taken in connection with what had gone before, charge appellant with the crime of embezzlement? Is such its plain and obvious meaning? In our opinion, a negative answer to each of these queries must be given. Section 35-1802, Comp. St.

1929, defines embezzlement as follows: "Any person being in the possession of the property of another, who shall convert such property to his own use, or dispose of such property in any way not authorized by the owner thereof, or by law, shall be guilty of embezzlement."

It is to this statute we must look for the purpose of determining if appellant was charged with the offense which its language defines. The offense being purely statutory, and unknown to the common law, Territory v. Maxwell, 2 N. M. 250, 267, we are not required to look beyond the statute itself to ascertain if the language used, measured, not by that technical accuracy employed in testing the sufficiency of an indictment, but according to its plain and obvious import, is fairly susceptible of the meaning attributed to it.

If we give to appellee's repetition of what he averred others had told him the status of a positive affirmance by him of its truth, we have nothing more than the charge that certain persons had delivered money to appellant for payment to appellee, and that the former had not yet done so. Such facts, if true, without more, would not constitute embezzlement under the statute. Nor would the implication necessarily or reasonably follow that nonpayment to appellee prior to the time in question was due to a conversion of the money to appellant's own use, or a disposal of same in a way not authorized by its owners or by law. These elements of the offense just mentioned are not directly charged, but must be imputed to the words spoken, if the crime of embezzlement is to be found embraced within them. Goodrich v. Hooper, 97 Mass. 1, 93 Am. Dec. 49.

If appellant at the time in question still retained the money for the owners' use pending settlement with appellee of disputed items on the bill, he would not be guilty of embezzlement. And it appears from allegations of the complaint that there was at least one disputed item on the bill by reason of a claimed overcharge. The words charged to not fix the time when the money was claimed to have been intrusted to appellant for payment to appellee. At least a reasonable time would be allowed for such purpose, but delay in so doing, even amounting to negligence, would not necessarily constitute embezzlement, so long as the appellant held the money unappropriated to his own use, and not otherwise disposed of as interdicted by the statute.

These are but supposed conditions under which the truth of all that was charged may be granted, and yet no imputation of embezzlement reasonably follow. It has been held that language claimed to be actionable will receive an innocent interpretation where fairly susceptible of it. Fulrath v. Wolfe, 250 Ill. App. 130; Pittsburgh R. R. Co. v. McCurdy, 114 Pa. 554, 8 A. 230, 60 Am. Rep. 363. This is but another way of saying that, where a per se slanderous character is sought to be impressed upon the claimed defamatory words, they will not be given such meaning, unless this is their plain and obvious import.

We conclude therefore, that the words complained of, treated as spoken of appellant as

an individual, do not charge him with the crime of embezzlement and are not actionable per se as so charging. Decided cases from our own and other jurisdictions, which in their application of controlling principles to the language charged have aided us in reaching this conclusion, are cited herein as follows: Wood v. Hannett, supra; Laurent v. Van Somple, 161 Wis. 354, 154 N. W. 366; Dimitry v. Levy, 161 La. 11, 108 So. 107; Lucas E. Moore Stave Co. v. Wells, 111 Miss. 796, 72 So. 228; Velikanje v. Millichamp, 67 Wash. 138, 120 P. 876; Rock v. McClarnon, 95 Ind. 415; Torres v. Huner, 150 App. Div. 798, 135 N. Y. S. 332; Yakavicze v. Valentukevicious, 84 Conn. 350, 80 A. 94, Ann. Cas. 1912C, 1264; Wooten v. Martin, 140 Ky. 781, 131 S. W. 783, Ann. Cas. 1912B, 407; Herman v. Post, 98 Conn. 792, 120 A. 606; Fensky v. Maryland Casualty Co., 264 Mo. 154, 174 S. W. 416, Ann. Cas. 1917D, 963; Dawson v. Shannon, 225 Ky. 638, 9 S.W.(2d) 999.

But the appellant does not wholly rely upon the claimed per se character of the words as imputing the crime of embezzlement to save his complaint. He contends with much vigor and earnestness that the words spoken impute to him a want of certain qualities essential to an attorney, and thereby touch him to his injury in his profession. It is true that slanderous statements which would not be actionable per se when spoken of a person as an individual may become so when spoken of the same person in relation to his trade, profession, or business. When so spoken, it is unnecessary to allege or prove special damage. Where the words com-plained of do not show upon their face to have been thus spoken, it is indispensable to the statement of a good cause of action under this theory that the complaint allege the defamatory words were spoken of and concerning the plaintiff in relation to his business or profession, if special damages are not laid. The absence of such an allegation is fatal to the complaint. 37 C. J. 30; 17 R. C. L. § 149, p. 395; Newell on Slander and Libel (4th Ed.) § 11; Mills v. Taylor, 3 Bibb, (Ky.) 469; Barnes v. Trundy, 31 Me. 321; Buck v. Hersey, 31 Me. 558; Bloss v. Tobey, 2 Pick. (Mass.) 320; Van Epps v. Jones, 50 Ga. 238; Hume v. Kusche, 42 Misc. Rep. 414, 87 N. Y. S. 109; Cassavoy v. Pattison, 93 App. Div. 370, 87 N. Y. S. 658; Brayton v. Cleveland Special Police Co., 63 Ohio St. 83, 57 N. E. 1085, 52 L. R. A. 525; Smedley v. Soule, 125 Mich. 192, 84 N. W. 63; McDermott v. Union Credit Co., 76 Minn. 84, 78 N. W. 967, 79 N. W. 673; Harkness v. Chicago Daily News Co., 102 Ill. App. 162; Ayre v. Craven, 2 Ad. & E. 2, 111 Eng. Rep. (Reprint) 1.

The words here complained of do not show on their face to have been spoken of the appellant in relation to his profession. His occupation was not mentioned, and those hearing the words, without the special knowledge of the subject of conversation possessed by the parties themselves, or disclosed by the written statement, not claimed to have been seen by the hearers, could not have known from the language spoken that appellant's professional as distinguished from individual, acts were involved or questioned. It clearly required the aid of a colloquium. No

appropriate allegations appearing to apply the words to appellant's profession, and special damages not being laid, the complaint was fatally defective, considered as a charge of slander of appellant in his profession.

In reaching this conclusion we have not overlooked the effect of section 105-530, Comp. St. 1929. The Supreme Court of Missouri, dealing with the same statute in Walsh v. Pulitzer Pub. Co., 250 Mo. 142, 157 S. W. 326, 329, Ann. Cas. 1914C, 985, in our opinion, gave it a proper construction. It said: "The extent of this section of the statute was simply to provide a short form of innuendo in actions of slander or libel, but not to dispense with the necessity of a statement of sufficient facts by way of inducement to show that words charged to be defamatory per se are spoken with a meaning imputing a crime. Krup v. Corley, 95 Mo. App. 640, 69 S. W. 609. It is therefore still necessary that all the averments required at common law to show the meanings of the words used must be made, and to state so much of the extrinsic facts as will show their meaning and to whom they are applied when such meaning and person are not embraced in the imputed words."

The point is raised by appellant that failure to allege the words were spoken of him in relation to his profession was not urged below as a ground of the demurrer. Since, by the omission of such allegation, the complaint fails to state a cause of action under this theory of the case, it is a matter that can be raised for the first time in the Supreme Court.

The judgment of the lower court on the complaint as it stood is correct, and it will be affirmed. It is so ordered.

WATSON and HUDSPETH, JJ., concur.

BICKLEY, C. J., and PARKER, J., did not participate.