MARTIN, Appellant, v. OUTBOARD MARINE CORPORATION, Respondent.*

*January 8—February 6, 1962.*

* Motion for rehearing denied, with $25 costs, on April 3, 1962.

454

For the appellant there were briefs by *Hardy & Hardy* of Louisville, Kentucky, and *Foley, Sammond & Lardner* of

Milwaukee, and oral argument by *David E. Beckwith* of Milwaukee, and *Ben B. Hardy.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Norman C. Skogstad* and *John J. Ottusch* of counsel, all of Milwaukee, and oral argument by *Mr. Ottusch.*

HALLOWS, J.  The first question is whether the defendant waived its right to object to the special verdict by failing to make any request for the inclusion in the verdict of the question inquiring whether the letter was understood in a defamatory sense by the people to whom it was sent.  It is true, during the trial the court invited counsel to suggest special-verdict questions and the defendant made no objection to the special verdict which was prepared; neither did the defendant request the inclusion in the special verdict of the disputed question.  The trial court, on motions after verdict, took the view that after it had ruled the letter was libelous as a matter of law, the defendant was not required under penalty of waiver to insist on an insertion in the verdict of a question which his ruling made unnecessary.  Most of the cases cited on the waiver point by the defendant concern cases where an appeal was taken from a denial of appellant's motion for a new trial on the grounds of waiver.  One can waive his right to object to the contents of a special verdict by failure to request an additional question.  See *Hilker v. Western Automobile Ins. Co.* (1930), 204 Wis. 1, 231 N. W. 257, 235 N. W. 413; *Swanson v. Maryland Casualty Co.* (1954), 266 Wis. 357, 63 N. W. (2d) 743; *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. (2d) 852; *Bassil v. Fay* (1954), 267 Wis. 265, 64 N. W. (2d) 826; *Kanzenbach v. S. C. Johnson & Son, Inc.* (1956), 273 Wis. 621, 79 N. W. (2d) 249; *Schimke v. Mutual Automobile Ins. Co.* (1954), 266 Wis. 517, 64 N. W. (2d) 195;

*Scalzo v. Marsh* (1961), 13 Wis. (2d) 126, 108 N. W. (2d) 163.

However, here, the trial court's ruling the letter was libelous as a matter of law precluded including the question in the special verdict and the defendant, under such facts, was not required to ask that the question be submitted. On motions after verdict, the trial court was unable to supply the answer to the question as a matter of law because he would have to conclude the letter was not understood by the recipients thereof in a defamatory sense or that the letter was not defamatory in any meaning. The defendant did not waive his right to raise the question of the error of law on motions after verdict. The argument of the plaintiff, based more on form than on substance, would prevent a trial court from correcting a ruling which it believed to be erroneous and which controlled the contents of the verdict. We hold, on these facts, that a trial court under sec. 270.49, Stats., is not so limited in its powers to grant a new trial based on an error of law.

Further discussion of the points raised by the plaintiff requires a brief discussion of the law of libel and its anomalies. That these and absurdities exist in the law, there is no doubt. Pollock, Law of Torts (13th ed.), pp. 243–249; Courtney, Absurdities of the Law of Slander and Libel, 36 American Law Review (1902), 552. The indiscriminate use of the phrases "defamatory *per se*," "libel *per se*," "slander *per se*," "actionable *per se*," "libel *per quod*," and "libelous as a matter of law" as sometimes expressing some shade of the same meaning and other times different and various meanings, has led only to confusion. Two opposing rules governing the actionability of libel exist which also add to the confusion.

Defamation is composed of libel and slander. Some courts consider them Siamese twins, others identical twins, still others just twins. Historically, they are not twins but

siblings. At common law, all libels were actionable without proof that damages occurred. Damages to one's reputation were conclusively presumed from the publication of the libel itself. A jury could award not only nominal damages but substantial damages by way of compensation of the harm to the plaintiff's reputation without alleging or proving that such damages, in fact, occurred. Shakespeare expressed the idea in the words of Iago:

"Good name in man and woman, dear my lord,
"Is the immediate jewel of their souls;
"Who steals my purse steals trash; 'tis something, nothing;
" 'Twas mine, 'tis his, and has been slave to thousands;
"But he that filches from me my good name
"Robs me of that which not enriches him,
"And makes me poor indeed."

Othello, Act III, Scene III.

This is the rule in England and in the minority of states as to all libels, not only those defamatory on their face, sometimes called "libelous *per se,*" but also those in which reference to extrinsic facts must be made to establish the defamatory meaning, which sometimes is called "libel *per quod.*" Odgers, The Common Law of England (2d ed.), p. 552; Prosser, Law of Torts (2d ed.), p. 587, sec. 93; Restatement, 3 Torts, Defamation, p. 165, sec. 569.

A majority of authorities now hold, however, that where extrinsic facts are necessary to prove the defamatory imputation conveyed (libel *per quod*), damages will not be presumed and such type of libel is not actionable without pleading and proving special damages. Prosser, Law of Torts (2d ed.), p. 587, sec. 93. Kentucky seems to so hold. *Towles v. Travelers Ins. Co.* (1940), 282 Ky. 147, 137 S. W. (2d) 1110; *Axton Fisher Tobacco Co. v. Evening Post Co.* (1916), 169 Ky. 64, 183 S. W. 269; *Elkins v. Roberts* (Ky. 1951), 242 S. W. (2d) 994. In such states, the term "libel *per se*" is often used to refer to libels defamatory on

their face and not libels *per quod*. In such a meaning, libelous *per se* becomes synonymous with actionable *per se* (actionable without proof of special damages). This departure from the common law is said to have resulted from the confusion of the two meanings of defamation *per se* which may mean either the words are defamatory on their face or are actionable without proof of damages. Prosser, Law of Torts (2d ed.), p. 588, sec. 93.

Slander, originally, was not actionable without proof of actual damage of a pecuniary nature, called special damages, but by the nineteenth century it was established that some kinds of slander were actionable without proof of damages which would be presumed from the character of the defamatory language. Such slander was thus actionable *per se* and consisted of an imputation of certain crimes or of a loathsome disease, or affecting the plaintiff in his business, trade, profession, or office, and of unchastity to a woman. Restatement, 3 Torts, Defamation, p. 170, sec. 570. Newell, Slander and Libel (3d ed.), p. 97, sec. 53; Odgers, Libel and Slander (5th ed.), ch. III, p. 39. Such slander has been referred to as slander *per se* either in the sense of being actionable without proof of special damages or of being defamatory as a matter of law. All other slander not falling into these seemingly artificial categories, no matter how obvious or apparent, is not actionable without alleging and proving special damages. Restatement, 3 Torts, Defamatory Communications Causing Special Harm, p. 185, sec. 575; Newell, Slander and Libel (3d ed.), p. 97, sec. 53. Having proven such special harm of a pecuniary nature resulting from the action of third persons affected by the slander, the plaintiff may also recover general compensatory damages, in a parasitic manner, for damages to the invasion of his interest in his reputation and good name including his own injured feelings.

Libel *per se* and slander *per se* have been used to mean actionable *per se* and sometimes confused with it. The distinction between defamation, which is actionable by itself, or *per se,* and that which requires proof of special damages is not the same as the distinction between language which may be defamatory on its face or may convey a defamatory meaning only by reason of extrinsic circumstances. Our own court confused these two ideas in *Judevine v. Benzies-Montanye Fuel & Whse. Co.* (1936), 222 Wis. 512, 269 N. W. 295, in affirming an order overruling a demurrer to the complaint in stating no special damages were alleged in the complaint and, therefore, to constitute a cause of action for libel, the matter published must be libelous *per se.* The court also stated that words not libelous *per se* have been held to be capable of conveying a libelous meaning by special circumstances under which they were used. No Wisconsin cases· were cited for either statement; however, Kentucky cases were. The author of that opinion conveyed the same idea in an earlier dissenting opinion in *Helmicks v. Stevlingson* (1933), 212 Wis. 614, 250 N. W. 402, stating that when words are not libelous *per se,* special damages must be alleged to make them actionable. On the authority of the *Judevine Case* alone, this court in *Kassowitz v. Sentinel Co.* (1938), 226 Wis. 468, 277 N. W. 177, stated it was well settled that in matters not libelous *per se* special damages must be pleaded to state a cause of action. In view of the confusion of the terms, we do not consider the language in these cases establishes in Wisconsin two kinds of libel, one requiring an allegation and proof of special damages, and the other not. We adhere to and adopt the common-law rule of libel, as stated in sec. 569 [1] of the

---

[1] Restatement, 3 Torts, Defamation, p. 165, sec. 569:

"Liability Without Proof of Special Harm, When Imposed—Libel.

"One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the

Restatement, 3 Torts, Defamation, that all libels are actionable without alleging or proving special damages.

In the light of this explanation, the plaintiff's argument there was no inconsistency in the holding of the trial court that the letter was libelous *per se* and submitting a question to the jury as to the meaning understood by the recipients, is untenable. The court was not using the term "libelous *per se*" in the sense of actionable *per se,* nor would it have been correct to dismiss the complaint because no special damages were proven.

In Wisconsin, the words libelous *per se* are sometimes used to indicate language which the court holds defamatory as a matter of law and at other times as being capable of a defamatory meaning. It is the function of the court to determine in the first instance whether a communication published in the form of libel or slander is capable of a defamatory meaning. *Hoan v. Journal Co.* (1941), 238 Wis. 311, 298 N. W. 228; *Luthey v. Kronschnabl* (1942), 239 Wis. 375, 1 N. W. (2d) 799; *Puhr v. Press Publishing Co.* (1946), 249 Wis. 456, 25 N. W. (2d) 62; *Meier v. Meurer* (1959), 8 Wis. (2d) 24, 98 N. W. (2d) 411; *De Husson v. Hearst Corp.* (7th cir. 1953), 204 Fed. (2d) 234. This question is generally raised on demurrer. If the publication is capable of a defamatory meaning and in the form of libel, it is actionable without an allegation of special damages; if in the form of slander not constituting one of the four arbitrary categories, it is not actionable without an allegation of special damage. After proof is in, the court may decide the communication is subject to one or more meanings, one being defamatory and the other innocent, or all defamatory. If

publication a libel is liable to the other although no special harm or loss of reputation results therefrom."

"Defamation" is defined in sec. 559, p. 140, as "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

the only possible meaning or meanings of the communication under all the facts in the case are defamatory as applied to the plaintiff and could only be reasonably so understood by the recipient, the court may hold the language defamatory as a matter of law and there is no question to go to the jury. If the court determines the communication is capable of an innocent meaning as well as a defamatory meaning, it is then for the jury to determine whether the communication capable of a defamatory meaning was so understood by its recipient. It is misleading to state on demurrer that the alleged libel, whether on its face or by reason of extrinsic circumstances, is libelous *per se* when all that is then decided is that the alleged publication is capable of a defamatory meaning.

The second basic argument advanced by the plaintiff is that a question, inquiring whether the letter was understood by the people to whom it was published in a defamatory sense, was neither a necessary nor a proper inclusion in the verdict because the trial court was correct in first holding the letter, as a matter of law, was libelous and could admit of no other meaning than a defamatory one under the facts. Conceding the letter was capable of a defamatory meaning, we are of the opinion the letter was also capable of being reasonably understood by the recipients in a nondefamatory sense. Many of the cases cited by the plaintiff deal with publications by newspapers and the use of popular or common definitions of the alleged defamatory words. See, *e. g., Gearhart v. WSAZ, Inc.* (D. C. Ky. 1957), 150 Fed. Supp. 98; *Leuch v. Berger* (1915), 161 Wis. 564, 155 N. W. 148; *Pfister v. Milwaukee Free Press Co.* (1909), 139 Wis. 627, 121 N. W. 938. In such cases, the meaning of the words in their natural and ordinary meaning understood by lay persons reading the newspaper is proper but in determining whether a communication is defamatory, the whole context of the communication should be construed with the alleged

particular words of defamation if there is an integral relationship between the contents and the alleged words. *Singler v. Journal Co.* (1935), 218 Wis. 263, 260 N. W. 431; *Putnam v. Browne* (1916), 162 Wis. 524, 155 N. W. 910; *Ingalls v. Morrissey* (1913), 154 Wis. 632, 143 N. W. 681; *Culver v. Marx* (1914), 157 Wis. 320, 147 N. W. 358; *Robertson v. Edelstein* (1899), 104 Wis. 440, 80 N. W. 724; *Bradley v. Cramer* (1884), 59 Wis. 309, 18 N. W. 268; Odgers, Libel and Slander (5th ed.), ch. V, p. 114.

Likewise, in determining whether the communication is capable of a defamatory meaning and also in determining whether the defamatory meaning was understood by the recipients, the surrounding circumstances under which the alleged slander or libel was published must be taken into consideration. *Weil v. Schmidt* (1871), 28 Wis. 137; *Kloths v. Hess* (1906), 126 Wis. 587, 106 N. W. 251; Newell, Slander and Libel (3d ed.), p. 934, sec. 929; Restatement, 3 Torts, comment *e,* p. 149, sec. 563. Consequently, "bootlegging a certain number of Evinrude motors" must be read together with the words the plaintiff "is not now an Evinrude dealer" and not "entitled to buy Evinrude motors . . . at anything less than full list price." The defendant operated under an authorized system of dealerships which contract contained what might be called a fair-trade-practice clause in which dealers agreed not to sell Evinrude motors at less than list price unless authorized by the defendant. This arrangement was of mutual interest and benefit to both the defendant and its dealers. Under such condition, the court properly held there was a privileged occasion.

The words alleged to be libelous are susceptible of the meaning the plaintiff was buying Evinrude motors at a discount from dealers and reselling them, a practice which is not illegal. There was some testimony such conduct did not harm the reputation of the plaintiff in his business so as to lower him in the estimation of the recipients of the

letter. Some testimony was to the contrary. True, the communication might deter the dealers, as was intended, from dealing with the plaintiff but only from such transactions as he was not authorized or entitled to make with the dealers. Considering the context of the letter, the circumstances under which it was written, and its particular recipients, the trial court, on motions after verdict, properly held the communication was capable both of a defamatory and nondefamatory meaning. It was a question of fact for the jury to determine what meaning was understood by the dealers.

*By the Court.*—Order affirmed.