471 P.2d 178

**F. L. W. REED, Plaintiff-Respondent,**

v.

**Mitchell MELNICK, Defendant-Petitioner.**

**No. 8950.**

Supreme Court of New Mexico.

July 6, 1970.

Sommer & Lawler, Santa Fe, for defendant-petitioner.

Sterling F. Black, Albuquerque, for plaintiff-respondent.

## OPINION

WATSON, Justice.

Certiorari was granted to the Court of Appeals for the above entitled case. The opinion below, which appears at 81 N.M. 14, 462 P.2d 148 (Ct.App.1969), will not be set forth here except by reference. It was a libel action brought against the writer of a letter to an insurance company requesting that a refund premium not be sent to the agent (plaintiff), because "people cannot get money out of him * * * as he is threatening bankruptcy." The Court of Appeals held that this language was libelous *per se* since it had a tendency to adversely affect plaintiff in his business, trade, or profession, and thus a cause of action was stated even though special damages were not pleaded.

In their dissent in the libel action of McGaw v. Webster, 79 N.M. 104, 440 P.2d 296 (1968), Justices Moise and Carmody asked for a re-examination of the *"per se"* and *"per quod"* doctrine followed by this court.

In Thomas v. Frost, 79 N.M. 125, 440 P.2d 800 (Ct.App.1968), the Court of Appeals held that the publication of an indebtedness in a credit report was not "libel per se" but said:

"In so doing, we do not overlook appellant's contention that the distinction between per se and per quod libel be reconsidered. There is authority for such a reconsideration. Hinkle v. Alexander, 244 Or. 267, 411 P.2d 829, 417 P.2d 586 (1966); Martin v. Outboard Marine Corp., 15 Wis.2d 452, 113 N.W.2d 135 (1962) and Herrmann v. Newark Morning Ledger Co., 48 N.J.Super. 420, 138 A.2d 61 (1958). However, the very recent New Mexico Supreme Court decision of McGaw v. Webster, supra, continued to recognize and apply the distinction. We feel reconsideration is foreclosed because of the recentness of the decision of New Mexico's highest court." 79 N.M. at 128, 440 P.2d at 803.

See also Judge Oman's remarks in his dissent in the present case, 462 P.2d at 151.

In view of the above, and because we felt that the matter involved an issue of substantial public interest, we granted certiorari and requested that the attorneys for the respective parties submit briefs suggesting alternatives to the holdings placed in doubt by the learned justices and judges.

In the present case the appellate court held that where the written defamatory statement contained an imputation which falls within one of the four categories which constitute slander *per se*, then the defamatory statement is libelous *per se*, and no special damages need be pleaded. These are imputations of: (1) a crime; (2) a loathsome disease; (3) those adversely affecting plaintiff in his business, trade, profession, office, or calling; and (4) unchastity to a woman. Prosser, Law of Torts § 107 (3rd ed. 1964).

Although there is substantial authority for the holding of the Court of Appeals, as shown by the citations in its opinion, authorities to the contrary are also substantial, as indicated in the quote from Thomas v. Frost, supra. In Hinkle v. Alexander, 244 Or. 267, 417 P.2d 586 (1966), the court described the debate within the American Law Institute over what rule as to libel should be adopted for Restatement (Second) of Torts. The present Reporter (Prosser) wishes to adopt a rule which, like the present New Mexico rule, would require pleading of special damages unless the defamatory matter was libelous per se, where as apparently a majority of the Institute members favor retention of the "common law" rule now embodied in Restatement of Torts § 569 (1938), with a modification hereinafter discussed. In this debate, our holding in Chase v. New Mexico Publishing Co., 53 N.M. 145, 203 P.2d 594 (1949), has been questioned. Eldredge, The Spurious Rule of Libel Per Quod, 79 Harv. L.Rev. 733, 743 (1966); Prosser, More Libel Per Quod, 79 Harv.L.Rev. 1629, 1641

(1966); 43 A.L.I. Proceedings 435, 443 (1966).

In New Mexico, we continue to make a distinction between oral and written defamation. The reason for such a distinction was set forth in Dillard v. Shattuck, 36 N.M. 202, 11 P.2d 543 (1932), where Justice Sadler said:

"Finally, it should be borne in mind, as an established distinction, that oral defamation is more strictly construed than is libel. 36 C.J. 1157; 17 R.C.L. 266; Jones v. Jones, (1916) 2 A.C. 401, 10 British Ruling Cases, 511, and case note at page 543. The reason for this distinction is obvious. Written slander, by reason of its wider circulation and enduring form, is calculated to inflict greater permanent injury to character, and suggests stronger malice by reason of its studied preparation." 36 N.M. at 205, 11 P.2d at 545.

The reasons for the requirement of proof of special damages in libel actions where the defamatory words do not convey a defamatory meaning without resort to extrinsic facts which demonstrate the defamatory nature of the writing, and why all slander actions except those involving the four imputations above mentioned require proof of special damages are largely historical and are well set forth in Prosser, Libel Per Quod, 46 Va.L.Rev. 839, 840 (1960). This requirement of allegation and proof of special damages is a serious hurdle to a recovery in either libel or slander actions. See Del Rico Co. v. New Mexican, 56 N.M. 538, 246 P.2d 206 (1952), and Dillard v. Shattuck, supra. What is the money value of one's reputation, even when related to a business or profession? It may well be that we are requiring the plaintiff to "measure the unmeasurable," as stated in Comment, The Libel Per Se— Libel Per Quod Distinction in New Mexico, 4 Nat.Res.J. 590, 604 (1965). Under the present rules, if he cannot measure his reputation he cannot even vindicate it.

We believe that the better rule recognizes that an injury may be as great where the defamation is latent as where it is patent, and the very serious harm may result from false imputations not included within the four indicated above. We doubt if all of the reasons for the distinction between libel and slander are still valid. Certainly today there is often as wide a circulation of the spoken word via radio and television as there is of the written word in the press. If prejudiced juries are prone to award large verdicts against publishers, the better rule would correct this by proper instructions or the remittitur of excessive judgments, rather than depriving the injured person of his cause of action. The press in this state should have the same protection from its innocent mistakes as that afforded the visual or sound broadcasters who are held free of liability for theirs "unless it shall be alleged and proved by the complaining party, that such owner, licensee, operator or such agent or employee, has failed to exercise due care to prevent the publication or utterance of such statement in such broadcast." Section 40–27–35, N.M.S.A., 1953 Comp.

We hold that the better rule, which we hereby adopt, is as follows:

One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel, is liable to the other although no special harm or loss of reputation results therefrom; provided, however, that where the defamatory character of the writing can only be shown by reference to extrinsic facts the plaintiff must plead and prove either: (1) that the publisher knew or should have known of the extrinsic facts which were necessary to make the statement defamatory in its innuendo; or (2) special damages.

Thus we adopt § 569 of the Restatement of Torts, together with what we understand to be the intended meaning of the amendment adopted at the 1966 meeting of the American Law Institute. Restatement of Torts, supra; 43 A.L.I. Proceedings, supra, at 460. This, we believe, is in keeping with

Justice Traynor's reasoning in the California case of MacLeod v. Tribune Publishing Co., 52 Cal.2d 536, 343 P.2d 36 (1959). See, also, Hinsdale v. Orange County Publications, Inc., 17 N.Y.2d 284, 270 N.Y.S.2d 592, 217 N.E.2d 650 (1966); Samore, New York Libel Per Quod: Enigma Still?, 31 Albany L.Rev. 250 (1967); Comment, Defamation—Libel Per Quod and Special Damage, 45 N.C.L.Rev. 241 (1966). Our previous holdings contrary to the above are modified accordingly. Such would include McGaw v. Webster, supra; Rockafellow v. New Mexico State Tribune Co., 74 N.M. 652, 397 P.2d 303 (1964); Hoeck v. Tiedebohl, 74 N.M. 146, 391 P.2d 651 (1964); Young v. New Mexico Broadcasting Company, 60 N.M. 475, 292 P.2d 776 (1956); Del Rico Co. v. New Mexican, supra; and Chase v. New Mexico Publishing Co., supra. We limit the statement of the "per se—per quod" rule in Ramsey v. Zeigner, 79 N.M. 457, 444 P.2d 968 (1968), and question its use by the Court of Appeals in Thomas v. Frost, supra. Should, however, the plaintiff be unable to prove the required knowledge on the part of the publisher, the rule as set forth in the above cases requiring pleading and proving of special damages is not changed.

In Herrmann v. Newark Morning Ledger Co., 48 N.J.Super. 420, 138 A.2d 61 (1958), the succinct conclusion of the well reasoned opinion was:

"* * * [W]e conclude and hold that it is not necessary to plead or prove special (pecuniary) damages to recover for the publication here complained of by mere reason of the fact that reference to extrinsic facts will be necessary to expose the defamatory impact of the article upon the plaintiff. General damages will be presumed, as in any case of a libel, or written defamation." 138 A.2d at 75.

We agree with the New Jersey Court, except that we do not apply this rule unless the publisher knew or should have known of the extrinsic facts necessary to make the statement defamatory. In other words, the plaintiff must either plead and prove special damages or show that the publisher knew or should have known the necessary extrinsic facts in any action for latent libel. In any such case extrinsic facts relevant to prove defamation in its innuendo will be reviewed. In the case of patent (or per se) libel, of course, no extrinsic facts are necessary and damages are presumed.

The exception we have added is for the protection of innocent publishers. Oregon adopted the Restatement rule in Hinkle v. Alexander, supra, without providing an exception like ours, but said:

"In support of the libel *per quod* rule it is contended by some, and as partially stated by Justice Traynor, in MacLeod v. Tribune Publishing Co., 1959, 52 Cal.2d 536, 550, 343 P.2d 36, 43–44, that the *per quod* rule protects the news media from vexatious actions for trifling claims of libel. Prosser, More Libel Per Quod, supra, 79 Harv.L.Rev., at 1646 et seq. If there is merit to the argument it does not apply in Oregon because of our retraction statutes, ORS 30.150 et seq." 417 P.2d at 589.

It should be noted that New Mexico has no retraction statute.

Prior to Chase v. New Mexico Publishing Co., supra, this court used the phrase "libel per se" to include both latent and patent libel. (This is pointed out in 4 Nat. Res.J., supra, at 596.) In Wood v. Hannett, 35 N.M. 23, 289 P. 590 (1930), after a verdict for $12,000 the trial court on motion dismissed the complaint on the ground that it did not state facts sufficient to constitute a cause of action. No special damages were alleged. On appeal this court said:

"* * * How shall we determine the tendency of the publication? Appellees say: From its face alone, without reference to any extrinsic fact, though pleaded by way of inducement. Appellant says: In the light of all facts pleaded as known to the reading public. We pass this, because appellees' later contention must be sustained, viz., that even in the light of the facts pleaded as inducement,

the publication of November 22d is not susceptible of a meaning rendering it libelous per se." 35 N.M. at 28, 289 P. at 592.

We then proceeded to examine all the pleadings and the testimony and upheld the trial court in its holding that the publication was not defamatory.

In Martin v. Outboard Marine Corporation, 15 Wis.2d 452, 113 N.W.2d 135, 140 (1962), the court adopted the rule set forth in § 569, Restatement of Torts, supra, and said:

"* * * If the publication is capable of a defamatory meaning and in the form of libel, it is actionable without an allegation of special damages; if in the form of slander not constituting one of the four arbitrary categories, it is not actionable without an allegation of special damage. After proof is in, the court may decide the communication is subject to one or more meanings, one being defamatory and the other innocent, or all defamatory. If the only possible meaning or meanings of the communication under all the facts in the case are defamatory as applied to the plaintiff and could only be reasonably so understood by the recipient, the court may hold the language defamatory as a matter of law and there is no question to go to the jury. If the court determines the communication is capable of an innocent meaning as well as a defamatory meaning, it is then for the jury to determine whether the communication capable of a defamatory meaning was so understood by its recipient. It is misleading to state on demurrer that the alleged libel, whether on its face or by reason of extrinsic circumstances is libelous per se when all that is then decided is that the alleged publication is capable of a defamatory meaning." 113 N.W.2d at 140.

■ We agree with the Wisconsin court. We reaffirm the innocent meaning rule as first set forth in Dillard v. Shattuck, supra, as applicable to both libel and slander. There, we said a defamatory character will not be given the words "unless this is their plain and obvious import," and that the language will "receive an innocent interpretation where fairly susceptible to it."

Although there are good reasons for abolishing the distinction between libel and slander, Thorley v. Lord Kerry, 4 Taunt. 355, 128 Eng.Rep. 367 (1812) ; Grein v. La Poma, 54 Wash.2d 844, 340 P.2d 766 (1959), so far as we know only the states of Washington and Louisiana have done so, and this was accomplished in the latter state by their civil code. La.Civ.Code Ann., art. 2315 (West 1952) ; Miller v. Holstein, 16 La. 389 (1840) ; Fitzgerald v. Hopkins, 70 Wash.2d 924, 425 P.2d 920 (1967). We recognize the unsatisfactory and arbitrary nature of the four categories of slander per se (imputations of crime, loathsome disease, unfitness for one's calling, or unchastity in a woman) where proof of actual damage is not required, but the limited issue in the case before us deters our action in changing the "established principles" of the slander action as set forth in Dillard v. Shattuck, supra.

■ By abolishing the requirement of proof of actual damage in a latent libel action except where there is no evidence that the publisher knew or should have known the damaging extrinsic facts, we do not assimilate the rules of slander to the libel action. We reaffirm our statement in Ramsey v. Zeigner, supra, that different rules are applicable to libel and slander actions. Since the rules of slander are more strictly construed, Dillard v. Shattuck, supra, the pseudo-maxim "actionable-as-slander-a-fortiori-actionable-as-libel" is applicable. See Henn, Libel-By-Extrinsic-Fact, 47 Cornell L.Q. 14, 49 (1961). The Court of Appeals was correct in ruling that the letter here was patently defamatory in its relation to plaintiff's business. See Restatement of Torts, supra, § 569 [Comment (e)]. Here there was no need to refer to extrinsic facts to determine the defamatory character of the writing, nor can we say that defamation was not the plain and obvious import of the words used. McGaw

v. Webster, supra; Dillard v. Shattuck, supra.

The judgment, if not the reasoning, of the Court of Appeals is affirmed.

It is so ordered.

COMPTON, C. J., and TACKETT and SISK, JJ., concur.